IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* DONALD GALE, | ) ) ) | CASE NO. CV 0127 |
| Plaintiff, | ) ) | JUDGE JUDGE BOYKO MAG. JUDGE McHARGH |
| v. | ) ) | |
| OMNICARE, INC. c/o Statutory Agent 1600 RiverCenter II 100 East RiverCenter Blvd. Covington, KY 41011, | ) ) ) ) ) ) | FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2) |
| | ) | COMPLAINT |
| Defendant. | ) ) | |
| | ) ) | **JURY TRIAL DEMANDED** |
| | ) | |

1.     Plaintiff-Relator Donald Gale (the "Relator"), resides at 7301 Grindle Road in Wadsworth, Ohio 44281.  The Relator is a pharmacist who has been employed by Omnicare, Inc. ("Omnicare") as General Manager of its Wadsworth, Ohio pharmacy since in or about March 2008.  From 1994 to March 2008, the Relator was employed by Omnicare as a consulting pharmacist, director, director of operations, vice president of operations, and executive director of its Wadsworth, Ohio pharmacy.  In the course of his employment there, the Relator learned of the conduct described herein.

2.     Defendant Omnicare is an institutional pharmacy.  Omnicare, Inc., a Fortune 500 company based in Covington, Kentucky, is a leading national provider of pharmaceutical care for the elderly. Omnicare serves residents in long-term care facilities, chronic care and other settings comprising approximately 1.4 million beds in 47 states, the District of Columbia and

Canada. Omnicare is the largest U.S. provider of professional pharmacy, related consulting and data management services for skilled nursing, assisted living and other institutional healthcare providers as well as for hospice patients in homecare and other settings. Omnicare's pharmacy services also include distribution and patient assistance services for specialty pharmaceuticals.

3.      Omnicare transacts business throughout the State of Ohio and the United States.

4.      In 2008, Omnicare had sales of $6.3 billion, of which 97% were derived from its pharmacy services, and provided pharmaceutical drugs and supplies to approximately 1.4 million patients. Omnicare owns and operates over 350 individual institutional pharmacies throughout the United States. The Omnicare pharmacy in Wadsworth, Ohio alone processes and sells more than 140,000 prescriptions per month. More than half of those are prescriptions for which payment is sought and received from a federally funded, federal health care program such as Medicare or Medicaid.

5.      The Relator brings this action on his own behalf and on behalf of the United States pursuant to 31 U.S.C. § 3730(b)(1). The Relator seeks to recover damages, civil penalties and other appropriate relief by reason of material false records or statements and false or fraudulent claims for payment or approval, knowingly presented or caused to be presented by Defendant Omnicare, to the Government or to an officer or employee of the United States Government, in violation of the Federal False Claims Act, 31 U.S.C. § 3729(a)(1)(A) and (B), as amended, and its predecessor, § 3729(a)(1) and (2), in connection with associated violations of federal and state law as herein alleged.

6.      Pursuant to 31 U.S.C. § 3730(b)(2), the Relator has served upon the Attorney General of the United States and the United States Attorney for the Northern District of Ohio,

Eastern Division, a Disclosure Statement of substantially all material evidence and information the Relator possesses related to this Complaint.

7.    The Relator has direct and independent knowledge of the information on which the allegations of this Complaint are based.    He voluntarily provided the information to the Government before filing this action, which is based on that information.    He is the original source of the information on which this action is based.    Jurisdiction exists, therefore, within the meaning of 31 U.S.C. § 3730(e)(4)(A) and (B).

8.    This Court has jurisdiction over this matter pursuant to 31 U.S.C. § 3732(a) in that the Defendant transacts business in this District and some of the acts alleged herein occurred in this District.

9.    This action should be assigned to the Eastern Division of this District, pursuant to Rule 3.8 of the Local Rules of the Northern District of Ohio, in that a substantial part of the events that give rise to these claims occurred in Cuyahoga, Stark, Summit, Mahoning, and other counties falling under the jurisdiction of this Division.

## FEDERAL HEALTH CARE PROGRAMS

10.    Medicare is a federal health care program created by statute and administered and funded by and through the federal government.    Medicare provides reimbursement for health care benefits, items and services, including pharmaceutical drugs and supplies.    It provides those reimbursements to participating health care providers on behalf its beneficiaries, through contracted intermediaries, or directly to its beneficiaries, who are primarily elderly persons. Medicare is administered by the federal Centers for Medicare & Medicaid Services ("CMS"), and by and through various regional intermediaries and coordinators.

11.    Medicaid is a federal health care program created by statute and administered and funded by and through the federal and state governments.    Medicaid provides health care

benefits for certain groups, primarily low income and disabled persons. The federal involvement in Medicaid includes providing matching funds and ensuring that states comply with minimum standards in the administration of the program. Medicaid is funded in part with federal monies, and in part with state funds. The federal share of Medicaid payments, known as the Federal Medical Assistance Percentage, is based on each state's per capita income compared to the national average. It typically ranges from 50-83%, with the balance funded by the respective states. Medicaid provides reimbursement for heath care benefits, items and services, including pharmaceutical drugs and supplies, to participating providers on behalf of its beneficiaries, or directly to its beneficiaries. Medicaid is administered federally by CMS, and in each of the states by agencies of state and county government.

12.    In Ohio, Medicaid is administered by the Ohio Department of Job and Family Services. In addition to Medicaid, Ohio and the other 49 states reimburse their citizens for health care items and services via other health care benefit programs, for example, the Ohio Bureau of Worker's Compensation.

13.    In addition to Medicare and Medicaid, the federal government funds and administers various health care programs, including by way of example, but not limited to, Ryan White, TRICARE and CHAMPUS (Civilian Health and Medical Program of the Uniformed Services).

14.    Defendant Omnicare is a participating pharmacy provider in federally funded health care programs including Medicare, Medicaid and others. Defendant Omnicare seeks and receives monetary payments for its goods and services from Medicare, Medicaid and other federally funded programs, directly or indirectly, from the programs themselves, from the federal and state agencies and contracted companies that administer and manage them, from long term

care facilities that are Medicare and Medicaid participating providers, and/or from resident patients of those facilities who are Medicare and/or Medicaid beneficiaries.

15.     As a material condition of its contractual agreement with each health care program, and as a material condition of each claim it submits for reimbursement to any agent of any such program, Omnicare agrees not to submit or cause the submission of false or fraudulent claims for reimbursement.  Omnicare knows, and has reason to know, that each participating long term care facility, and each patient beneficiary, as material conditions of their contractual agreements with federally funded programs, agree as well not to submit or cause the submission of any false or fraudulent claim for reimbursement.  Accordingly, Omnicare has reason to know, and does know, that a federally funded program, for example Medicare or Medicaid, would not pay a claim, or would not pay at the rate submitted, if it knew the claim to be based upon an illegal kickback, to be in violation of applicable pricing laws, or otherwise to be in violation of law.

**OMNICARE'S AGREEMENTS WITH SKILLED NURSING FACILITIES (SNFs)**

16.     Defendant Omnicare enters into contracts to supply prescription and other pharmaceutical drugs and supplies (herein "drugs") to long term care facilities and their resident patients.   The facilities are participating providers under agreements with Medicare and Medicaid, and typically in other federal, state and/or private health care benefit programs.  Omnicare knows, and has reason to know, that in addition to its own claims for reimbursement from Medicare and Medicaid and other federal or state health care programs, the facilities and the patient beneficiaries submit claims for reimbursement to those programs for the drugs Omnicare supplies.

17.     Some long term care facilities are certified Medicare Skilled Nursing Facilities ("SNFs").  Skilled nursing is a type of care for which SNFs receive reimbursement from a division of Medicare called Medicare Part A.  Medicare Part A pays participating SNFs a fixed fee per patient, per day, at a rate determined by the patient's condition, for the first 100 days of the patient's skilled care.  Medicare Part A pays participating SNFs for 100% of the first 20 days of skilled care; it pays a fee to represent a percentage of the cost of the next 80 days of care.  The per diem fee includes reimbursement to the SNF for the patient's pharmaceutical drugs and supplies.  Thus, to the extent a SNF can reduce its costs for pharmaceutical drugs and supplies associated with their Medicare Part A patients, the SNF can maximize profits from its Medicare Part A reimbursements.

18.     SNF patients typically are beneficiaries of Medicare, Medicaid or both, or of other federally funded or state-funded health care programs.  In addition to Medicare Part A, those beneficiaries' drugs may be reimbursed under Medicare Part B, Medicare Part C,  Medicare Part D or other government funded programs.  In some instances, Defendant Omnicare coordinates the submission of Medicare and/or Medicaid claims, or claims to other government health care benefit programs, on behalf of the facilities' resident/patients.  It prepares and submits claims to those programs for reimbursement on behalf of the eligible resident/patients.  In other instances, Omnicare submits claims and/or information for payment to the SNFs to allow the SNFs to submit claims to government health benefit programs for reimbursement.

**OMNICARE FALSE CLAIMS IN VIOLATION OF THE ANTI-KICKBACK STATUTE**

19.     The Anti-Kickback Statute, 42 U.S.C.  §  1320a-7b(a)(1),  imposes criminal penalties on anyone who knowingly and willfully makes or causes to be made any false statement or representation of a material fact in any application for any benefit or payment under a Federal health care program

20.     The Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(a)(2), imposes criminal penalties on anyone who knowingly and willfully makes or causes to be made any false statement or representation of a material fact for use in determining rights to such a benefit or payment.

21.     The Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(a)(3), imposes criminal penalties on anyone who, having knowledge of the occurrence of any event affecting the initial or continued right to any such benefit or payment of himself or any other individual on whose behalf he has applied for or is receiving such benefit or payment, knowingly and willfully conceals or fails to disclose such event with an intent fraudulently to secure such benefit or payment either n a greater amount or quantity than is due or when no such benefit or payment is authorized.

22.     The Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b)(2)(A) and (B), imposes criminal penalties on anyone who knowingly and willfully offers or pays any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind, to any person to induce such person to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a federal health care program, or to purchase or order, or arrange for or recommend purchasing or ordering, any good, service or item for which payment may be made in whole or in part under a Federal health care program.

23.     The Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(f) defines a federal health care program as "any plan or program that provides health benefits, whether directly, through insurance, or otherwise, which is funded directly, in whole or in part, by the United States

Government . . . or . . . any State health care program . . . . , and so includes the federal and state Medicare and Medicaid programs.

24.     At all times material to the Complaint, Omnicare has entered into contracts with selected SNFs, in this District and across the nation, to provide drugs to the SNFs' Medicare Part A patients at specified per diem pricing (herein, "per diem pricing"). Omnicare solicits contracts from those SNFs, and offers the diem pricing to those SNFs, to induce the SNFs to refer to Omnicare the furnishing or the arranging for the furnishing of drugs to the balance of the SNFs' patients. Omnicare offers and provides per diem pricing at rates, adjusted for patient population and drug mix, that are below the prices it charges other SNFs or other customers for Medicare Part A patients, below the prices it charges Medicaid for the same mix of drugs and supplies, below the prices it charges to other customers generally, and even, in some instances, below its own costs.

25.     In addition to per diem pricing, at all times material to the Complaint, Omnicare has offered and provided "prompt payment" discounts to selected SNFs to which it has offered and given the per diem pricing described above, to induce those SNFs to refer to Omnicare the furnishing or the arranging for the furnishing of drugs to the balance of the SNFs' patients. Omnicare has offered and provided that discount, as much as 17.4%, to those SNFs regardless of whether they promptly pay. The discounts apply to the drugs listed on Omnicare's invoices to the SNF, typically Medicare Part A drugs and non-covered drugs for which the SNF is responsible for payment. The discounts do not apply to drugs covered by Medicaid or other federal health care programs.

26.     The per diem pricing and prompt payment discounts described above are remuneration within the meaning of the Anti-Kickback Statute. At all material times, Defendant

Omnicare has offered or paid those remunerations to induce SNFs to refer to Omnicare the furnishing or arranging for a the furnishing of items or services for which payment may be made in whole or in part under a federal health care program, including non-Part A Medicare, Medicaid and other federally funded programs.

27.     The per diem pricing and prompt payment discounts described above are kickbacks in violation of the Anti-Kickback Statute.  The claims for reimbursement that Defendant Omnicare has submitted or caused to be submitted to Medicare Part A, based upon those kickbacks, are knowing and willful false statements or false representations of material facts, made in applications for benefits or payments, within the meaning of 42 U.S.C. § 1320a-7b(a)(1).

28.     At all material times, Defendant Omnicare has knowingly and willfully submitted the claims described above for Medicare Part A's use in determining rights to such benefits or payments within the meaning of 42 U.S.C. § 1320a-7b(a)(2).

29.     Defendant Omnicare, having knowledge of the Medicare Part A claims described above, concealed or failed to disclose the false statements and false representations upon which they were based -- the fact that they were kickbacks -- with an intent fraudulently to secure benefits or payments either in a greater amount or quantity than was due or when no such benefit or payment was authorized, within the meaning of 42 U.S.C. § 1320a-7b(a)(3).

30.     Defendant Omnicare, in offering reduced Medicare Part A pricing to selected SNFs, knowingly and willfully offered or paid remuneration to those SNFs, directly or indirectly, overtly or covertly, in cash or in kind, to induce those SNFs to refer to Omnicare one or more individuals for the furnishing or arranging for the furnishing of drugs for which payment may be

made in whole or in part by other Federal health care programs, within the meaning of 42 U.S.C. § 1320a-7b(b).

31.     At all material times, Defendant Omnicare knew, or was grossly negligent and/or reckless in not knowing, that the practices described herein were kickbacks in violation of 42 U.S.C. § 1320a-7b.  Omnicare knew, or was grossly negligent and/or reckless in not knowing, that the claims that it was submitting, and causing the submission of, to Medicare Part A, based on those kickbacks, were false and/or fraudulent.  Omnicare knew, or was grossly negligent and/or reckless in not knowing, that Medicare Part A would not pay the claims resulting from the practices described herein, or would not pay at the rates submitted, if it knew that the claims were premised upon kickbacks or were otherwise illegal, false or fraudulent.

32.     The kickbacks described above are false or fraudulent claims, material false records or statements, and were knowingly concealed from the Government by Omnicare, all in violation of The False Claims Act, 31 U.S.C. § 3729 *et seq.*

33.     Following are specific examples of the per diem pricing and prompt payment discount conduct of Omnicare with respect to SNFs within this District.  In each instance, Omnicare made, or caused to be made, claims to Medicare Part A for reimbursement for the described drugs.  In 2009, Omnicare management and pricing personnel confirmed to the Relator, in response to concerns voiced by him, that the conduct of Omnicare, as described above, occurs and has occurred nationwide, for many years, as a matter of Omnicare policy.

A.     As part of Omnicare's contractual agreement with SNF No. 1, Omnicare agreed to provide drugs to SNF No. 1's Medicare Part A residents at a rate of $21.25 per day.  Omnicare's agreement with SNF No. 1 called for the per diem rate to be reviewed annually, at which point the parties may negotiate a new per diem rate, a process referred

to by the parties as "truing up."  However, Omnicare provided SNF No. 1 with a Medicare Part A per diem rate of $21.25, without adjustment, from the beginning of the parties' agreement in 2005 through the present.  In return, Omnicare was able to service substantially all of SNF No. 1's patients, including those for whom claims were made to Medicaid, non-Part A Medicare, and other federal health care programs.  During the same period, Omnicare has charged others, including Medicaid, at prices above those Medicare Part A prices.  For example, from January 2008 through June 2009, Omnicare charged Medicaid a "Usual and Customary" rate of between $26.67 and $41.91 per diem.

      B.      As part of Omnicare's contractual agreement with SNF No. 2, Omnicare agreed to provide drugs to SNF No. 2's Medicare Part A residents at a rate of $19 per diem, without any provision for a "true up" of the rate to match what Omnicare was charging to Medicaid.  In practice, from January 2008 through July 2009, Omnicare provided to SNF No. 2 a Medicare Part A per diem rate, for the types and amounts of drugs (excluding certain over the counter, IV, or more expensive "carve-outs") that it provided to SNF No. 2's Medicare Part A residents, of $16.74 to $19 per day.  During the same period, the prices that Omnicare charged others, including Medicaid, for the same drugs, ranged from $20.05 to $51.37 per diem.  In addition, Omnicare gave SNF No. 2 a 17.4% "quick pay discount" on each monthly invoice regardless of whether SNF No. 2 paid the invoice in a timely fashion.  In return, Omnicare was able to service substantially all of the pharmaceutical needs of SNF No. 2's other patients, including those for whom claims were made to non-Part A Medicare, Medicaid and/or other Federal health care programs.

C.     As part of its contractual agreement with SNF No. 3, Omnicare has sold drugs to and to and for SNF No. 3's Medicare Part A patients, at prices below the prices that it charged others, including Medicaid, for the same drugs during the same time periods. In return, Omnicare was able to service substantially all of SNF No. 3's patients, including those for whom claims were made to non-Part A Medicare, Medicaid and/or other federal health care programs. For example, from January 2008 to July 2009, Omnicare sold drugs to SNF No. 3 for its Medicare Part A beneficiaries at $18.63 per diem, per patient beneficiary: from January 2008 through March 2009; at $21.63 from April 2009 through July 2009. During those same months, for the same drugs, Omnicare charged Medicaid the following prices per diem, per patient beneficiary: $31.67 in January 2008, $34.26 in February 2008, $27.97 in March 2008, $37.36 in April 2008, $32.58 in May 2008, $29.47 in June 2008, $34.20 in July 2008, $29.65 in August 2008, $57.22 in September 2008, $51.19 in October 2008, $56.61 in November 2008, $24.11 in December 2008, $27.62 in January 2009, $35.06 in February 2009, $22.59 in March 2009, $33.06 in April 2009, $21.15 in May 2009, $33.17 in June 2009, and $20.36 in July 2009. The average price charged to SNF No. 3 for Medicare Part A patients during the period of time between January 2008 through July 2009 was $19.27. The average price charged to Medicaid during the period of time between January 2008 through July 2009 was $32.02 per diem.

D.     Omnicare has sold drugs to SNF No. 4, and to and for SNF No. 4's Medicare Part A patients, at prices below the prices that it charged others, including Medicaid, for the same drugs during the same time periods. In return, Omnicare was able to service substantially all of SNF No. 4's patients, including those for whom claims were

made to non-Part A Medicare, Medicaid and/or other federal health benefit programs. For example, from January 2008 to July 2009, Omnicare sold drugs to SNF No. 4 for its Medicare Part A patients at a price of $17.00 per diem, per patient beneficiary. During those same months, for the same drugs, Omnicare charged Medicaid the following prices per diem, per patient beneficiary: $18.14 in January 2008, $34.25 in February 2008, $25.25 in March 2008, $13.82 in April 2008, $20.43 in May 2008, $23.29 in June 2008, $24.43 in July 2008, $16.50 in August 2008, $22.10 in September 2008, $34.62 in October 2008, $21.92 in November 2008, $31.52 in December 2008, $26.11 in January 2009, $25.98 in February 2009, $19.53 in March 2009, $35.37 in April 2009, $23.27 in May 2009, $35.80 in June 2009, and $35.87 in July 2009. The average price charged to Medicaid during the period of time between January 2008 through July 2009 was $25.82 per diem.

     E.     Omnicare has sold drugs to SNF No. 5, and to and for SNF No. 5's Medicare Part A patients, at prices below the prices that it charged others, including Medicaid, for the same drugs, during the same time periods. In return, Omnicare was able to service substantially all of SNF No. 5's patients, including those for whom claims were made to non-Part A Medicare, Medicaid and/or other federal health benefit programs. For example, from January 2008 to July 2009, Omnicare sold drugs to SNF No. 5 for its Medicare Part A beneficiaries at a price of $17.00 per diem, per patient beneficiary. During those same months, for the same drugs, Omnicare charged the Medicaid program the following prices per diem, per patient beneficiary: $19.67 in January 2008, $19.41 in February 2008, $23.39 in March 2008, $23.26 in April 2008, $26.02 in May 2008, $22.95 in June 2008, $21.33 in July 2008, $33.70 in August 2008,

$48.78 in September 2008, $23.12 in October 2008, $23.59 in November 2008, $26.87 in December 2008, $29.69 in January 2009, $37.69 in February 2009, $25.25 in March 2009, $23.12 in April 2009, $14.46 in May 2009, $16.64 in June 2009, and $21.41 in July 2009. The average price charged to Medicaid during the period of time between January 2008 through July 2009 was $24.58 per diem.

  F.  Omnicare has sold drugs to SNF No. 6, and to and for SNF No. 6's Medicare Part A patient beneficiaries, at prices below the prices that it charged others, including Medicaid, for the same drugs, during the same time periods. In return, Omnicare was able to service substantially all of SNF No. 6's patients, including those for whom claims were made to non-Part A Medicare, Medicaid and/or other federal health benefit programs. For example, from January 2008 to July 2009, Omnicare sold drugs to SNF No. 6 for its Medicare Part A beneficiaries at a price of $20.00 per diem, per patient beneficiary. During those same months, for the same drugs, Omnicare charged Medicaid the following prices per diem, per patient beneficiary: $52.60 in January 2008, $24.34 in February 2008, $37.19 in March 2008, $35.31 in April 2008, $36.90 in May 2008, $41.12 in June 2008, $53.53 in July 2008, $34.53 in August 2008, $27.72 in September 2008, $29.74 in October 2008, $31.05 in November 2008, $27.07 in December 2008, $26.90 in January 2009, $32.83 in February 2009, $31.92 in March 2009, $29.58 in April 2009, $29.00 in May 2009, $30.32 in June 2009, and $29.94 in July 2009. The average price charged to Medicaid during the period of time between January 2008 through July 2009 was $33.36 per diem.

  G.  Omnicare has sold drugs to SNF No. 7, and to and for SNF No. 7's Medicare Part A patient beneficiaries, at prices below the prices that it charged others,

including Medicaid, for the same drugs, during the same time periods. In return, Omnicare was able to service substantially all of SNF No. 7's patients, including those for whom claims were made to non-Part A Medicare, Medicaid and/or other federal health benefit programs. For example, from January 2008 to April 2009, Omnicare sold drugs to SNF No. 7 for its Medicare Part A beneficiaries at a price of $19.00 per diem, per patient beneficiary. During those same months, for the same drugs, Omnicare charged Medicaid the following prices per diem, per patient beneficiary: $28.72 in January 2008, $17.17 in February 2008, $12.95 in March 2008, $10.65 in April 2008, $17.99 in May 2008, $15.71 in June 2008, $69.79 in July 2008, $141.87 in August 2008, $55.06 in September 2008, $30.05 in October 2008, $14.27 in November 2008, $12.46 in December 2008, $14.12 in January 2009, $38.51 in February 2009, $29.29 in March 2009, and $24.69 in April 2009. The average price charged to Medicaid during the period of time between January 2008 through April 2009 was $31.53 per diem.

H.    Omnicare has sold drugs to SNF No. 8, and to and for SNF No. 8's Medicare Part A patient beneficiaries, at prices below the prices that it charged others, including Medicaid, for the same drugs, during the same time periods. In return, Omnicare was able to service substantially all of SNF No. 8's patients, including those for whom claims were made to non-Part A Medicare, Medicaid and/or other federal health benefit programs. For example, from January 2008 to April 2009, Omnicare sold drugs to SNF No. 8 for its Medicare Part A beneficiaries at a price of $19.00 per diem, per patient beneficiary. During those same months, for the same drugs, Omnicare charged Medicaid the following prices per diem, per patient beneficiary: $41.55 in January 2008, $15.29 in February 2008, $34.55 in March 2008, $28.49 in April 2008, $40.96 in May

2008, $40.40 in June 2008, $23.07 in July 2008, $19.34 in August 2008, $20.91 in September 2008, $33.27 in October 2008, $36.59 in November 2008, $31.04 in December 2008, $44.96 in January 2009, $44.27 in February 2009, $26.82 in March 2009, and $28.71 in April 2009. The average price charged to Medicaid during the period of time between January 2008 through April 2009 was $31.80 per diem.

I.      Omnicare has sold drugs to SNF No. 9, and to and for SNF No. 9's Medicare Part A patient beneficiaries, at prices below the prices that it charged others, including Medicaid, for the same drugs, during the same time periods. In return, Omnicare was able to service substantially all of SNF No. 9's patients, including those for whom claims were made to non-Part A Medicare, Medicaid and/or other federal health benefit programs. For example, from January 2008 to April 2009, Omnicare sold drugs to SNF No. 9 for its Medicare Part A beneficiaries at a price of $19.00 per diem, per patient beneficiary. During those same months, for the same drugs, Omnicare charged Medicaid the following prices per diem, per patient beneficiary: $26.43 in January 2008, $27.89 in February 2008, $37.13 in March 2008, $26.80 in April 2008, $34.48 in May 2008, $35.92 in June 2008, $34.16 in July 2008, $22.27 in August 2008, $21.30 in September 2008, $33.42 in October 2008, $32.33 in November 2008, $36.54 in December 2008, $21.22 in January 2009, $33.31 in February 2009, $40.11 in March 2009, and $25.10 in April 2009. The average price charged to Medicaid during the period of time between January 2008 through April 2009 was $30.61 per diem.

J.      Omnicare has sold drugs to SNF No. 10, and to and for SNF No. 10's Medicare Part A patient beneficiaries, at prices below the prices that it charged others, including Medicaid, for the same drugs, during the same time periods. In return,

Omnicare was able to service substantially all of SNF No. 10's patients, including those for whom claims were made to non-Part A Medicare, Medicaid and/or other federal health benefit programs. For example, from January 2008 to June 2009, Omnicare sold drugs to SNF No. 10 for its Medicare Part A beneficiaries at a price of $30.50 per diem, per patient beneficiary. During those same months, for the same drugs, Omnicare charged Medicaid the following prices per diem, per patient beneficiary: $59.93 in January 2008, $55.34 in February 2008, $30.76 in March 2008, $50.16 in April 2008, $41.59 in May 2008, $46.68 in June 2008, $45.86 in July 2008, $57.20 in August 2008, $61.15 in September 2008, $38.31 in October 2008, $51.25 in November 2008, $52.67 in December 2008, $43.60 in January 2009, $40.77 in February 2009, $38.73 in March 2009, $71.17 in April 2009, $31.71 in May 2009, and $44.01 in June 2009. The average price charged to Medicaid during the period of time between January 2008 through June 2009 was $46.79 per diem. In addition, Omnicare's written contract with SNF No. 10 at all relevant times has provided as follows: "[Omnicare] agrees to provide all pharmaceutical products and related services . . . to residents covered by Medicare Part A or managed care per diem arrangements at a rate of $30.50 per Covered Resident per day. * * * [The parties] agree to an initial review and potential rate adjustment after 120 days. Thereafter review periods and potential adjustments will be made on a 90-day schedule. The rate will be reviewed and adjusted based on a comparison with prevailing state Medicaid reimbursement." Despite that provision, the per diem rate that Omnicare charged to SNF No. 10 was not adjusted.

K.     Omnicare has sold drugs to SNF No. 11, and to and for SNF No. 11's Medicare Part A patient beneficiaries, at prices below the prices that it charged others,

including Medicaid, for the same drugs, during the same time periods. In return, Omnicare was able to service substantially all of SNF No. 11's patients, including those for whom claims were made to non-Part A Medicare, Medicaid and/or other federal health benefit programs. For example, from January 2008 to July 2009, Omnicare sold drugs to SNF No. 11 for its Medicare Part A beneficiaries at a price of $20.00 per diem, per patient beneficiary. During those same months, for the same drugs, Omnicare charged Medicaid the following prices per diem, per patient beneficiary: $45.33 in January 2008, $48.42 in February 2008, $35.19 in March 2008, $35.91 in April 2008, $41.11 in May 2008, $31.44 in June 2008, $44.82 in July 2008, $47.01 in August 2008, $38.68 in September 2008, $35.67 in October 2008, $38.92 in November 2008, $40.52 in December 2008, $37.40 in January 2009, $63.68 in February 2009, $40.27 in March 2009, $31.82 in April 2009, $31.48 in May 2009, $27.65 in June 2009, and $36.71 in July 2009. The average price charged to Medicaid during the period of time between January 2008 through July 2009 was $38.46 per diem.

L.      Omnicare has sold drugs to SNF No. 12, and to and for SNF No. 12's Medicare Part A patient beneficiaries, at prices below the prices that it charged others, including Medicaid, for the same drugs, during the same time periods. In return, Omnicare was able to service substantially all of SNF No. 12's patients, including those for whom claims were made to non-Part A Medicare, Medicaid and/or other federal health benefit programs. For example, from January 2008 to June 2009, Omnicare sold drugs to SNF No. 12 for its Medicare Part A beneficiaries at the following prices per diem, per patient beneficiary: from January 2008 through June 2008, a price of $29.00, and from July 2008 through June 2009, a price of $31.00. The average price charged to

SNF No. 12 during the period of time between January 2008 through June 2009 was $30.27. During those same months, for the same drugs, Omnicare charged Medicaid the following prices per diem, per patient beneficiary: $35.22 in January 2008, $31.43 in February 2008, $48.33 in March 2008, $53.91 in April 2008, $48.78 in May 2008, $45.67 in June 2008, $69.16 in July 2008, $39.78 in August 2008, $35.11 in September 2008, $36.58 in October 2008, $24.28 in November 2008, $31.28 in December 2008, $40.38 in January 2009, $35.69 in February 2009, $40.13 in March 2009, $34.44 in April 2009, $29.10 in May 2009, and $47.91 in June 2009. The average price charged to Medicaid during the period of time between January 2008 through June 2009 was $40.22.

      M.    Omnicare has sold drugs to SNF No. 13, and to and for SNF No. 13's Medicare Part A patient beneficiaries, at prices below the prices that it charged others, including Medicaid, for the same drugs, during the same time periods. In return, Omnicare was able to service substantially all of SNF No. 13's patients, including those for whom claims were made to non-Part A Medicare, Medicaid and/or other federal health benefit programs. For example, from January 2008 to June 2009, Omnicare sold drugs to SNF No. 13 for its Medicare Part A beneficiaries at the following prices per diem, per patient beneficiary: from January 2008 through June 2008, a price of $29.00, and from July 2008 through June 2009, a price of $31.00. The average price charged to SNF No. 13 during the period of time between January 2008 through June 2009 was $30.27. During those same months, for the same drugs, Omnicare charged Medicaid the following prices per diem, per patient beneficiary: $46.99 in January 2008, $47.04 in February 2008, $42.20 in March 2008, $50.40 in April 2008, $36.81 in May 2008, $46.59 in June 2008, $45.05 in July 2008, $36.21 in August 2008, $31.95 in September 2008,

$42.82 in October 2008, $25.98 in November 2008, $36.28 in December 2008, $37.29 in January 2009, $50.96 in February 2009, $37.59 in March 2009, $28.96 in April 2009, $44.66 in May 2009, and $47.86 in June 2009. The average price charged to Medicaid during the period of time between January 2008 through June 2009 was $41.00 per diem.

N.     Omnicare has sold drugs to SNF No. 14, and to and for SNF No. 14's Medicare Part A patient beneficiaries, at prices below the prices that it charged others, including Medicaid, for the same drugs, during the same time periods. In return, Omnicare was able to service substantially all of SNF No. 14's patients, including those for whom claims were made to  non-Part A Medicare, Medicaid and/or other federal health benefit programs. For example, from January 2008 to June 2009, Omnicare sold prescription drugs to SNF No. 14 for its Medicare Part A beneficiaries at a price of $16.29 per diem, per patient beneficiary. During those same months, for the same drugs, Omnicare charged Medicaid the following prices per diem, per patient beneficiary: $15.65 in January 2008, $23.76 in February 2008, $26.32 in March 2008, $17.28 in April 2008, $12.14 in May 2008, $18.69 in June 2008, $17.05 in July 2008, $24.91 in August 2008, $18.22 in September 2008, $20.98 in October 2008, $20.58 in November 2008, $16.62 in December 2008, $22.03 in January 2009, $14.12 in February 2009, $31.55 in March 2009, $22.41 in April 2009, $15.49 in May 2009, and $14.57 in June 2009. The average price charged to Medicaid during the period of time between January 2008 through June 2009 was $19.46 per diem. Omnicare's written contract with SNF No. 14 provides as follows: "As compensation for those pharmaceutical services provided by [Omnicare] to [SNF No. 14's] residents, a Full Capitated Rate of $16 and 29 cents ($16.29) per patient day. The Capitated Rate will be charged for each Medicare Part A

enrollee patient day in [SNF No. 14] during the Month. * * * At the end of each quarter, the Full Capitated Rate as set forth above shall be reviewed and adjusted appropriately." Despite the presence of this provision in the parties' agreement, the per diem rate that Omnicare charged to SNF No. 14 was not adjusted.

O.    Omnicare has sold drugs to SNF No. 15, and to and for SNF No. 15's Medicare Part A patient beneficiaries, at prices below the prices that it charged others, including Medicaid, for the same drugs, during the same time periods.  In return, Omnicare was able to service substantially all of SNF No. 15's patients, including those for whom claims were made to non-Part A Medicare, Medicaid and/or other federal health benefit programs.  For example, from January 2008 to June 2009, Omnicare sold prescription drugs to SNF No. 15 for its Medicare Part A beneficiaries at a price of $20.00 per diem, per patient beneficiary.  During those same months, for the same drugs, Omnicare charged Medicaid the following prices per diem, per patient beneficiary: $20.42 in January 2008, $24.60 in February 2008, $29.51 in March 2008, $46.46 in April 2008, $34.18 in May 2008, $45.95 in June 2008, $31.03 in July 2008, $16.98 in August 2008, $20.19 in September 2008, $23.07 in October 2008, $21.44 in November 2008, $21.09 in December 2008, $19.73 in January 2009, $21.58 in February 2009, $17.66 in March 2009, $20.10 in April 2009, $26.65 in May 2009, and $19.62 in June 2009.  The average price charged to Medicaid during the period of time between January 2008 through June 2009 was $24.28 per diem.

P.    Omnicare has sold drugs to SNF No. 16, and to and for SNF No. 16's Medicare Part A patient beneficiaries, at prices below the prices that it charged Medicaid, for the same drugs, during the same time periods.  In return, Omnicare was able to

service substantially all of SNF No. 16's patients, including those for whom claims were made to non-Part A Medicare, Medicaid and/or other federal health benefit programs. For example, from January 2008 to July 2009, Omnicare sold drugs to SNF No. 16 for its Medicare Part A beneficiaries at a price of $21.00 per diem, per patient beneficiary. During those same months, for the same drugs, Omnicare charged Medicaid the following prices per diem, per patient beneficiary: $43.93 in January 2008, $43.89 in February 2008, $51.52 in March 2008, $42.26 in April 2008, $39.20 in May 2008, $45.07 in June 2008, $45.90 in July 2008, $38.10 in August 2008, $51.19 in September 2008, $42.31 in October 2008, $41.36 in November 2008, $34.37 in December 2008, $37.27 in January 2009, $37.79 in February 2009, $35.09 in March 2009, $45.91 in April 2009, $41.07 in May 2009, $40.51 in June 2009, and $32.35 in July 2009. The average price charged to Medicaid during the period of time between January 2008 through July 2009 was $41.39 per diem.

Q.     Omnicare has sold drugs to SNF No. 17, and to and for SNF No. 17's Medicare Part A patient beneficiaries, at prices below the prices that it charged others, including Medicaid, for the same drugs, during the same time periods. In return, Omnicare was able to service substantially all of SNF No. 17's patients, including those for whom claims were made to non-Part A Medicare, Medicaid and/or other federal health benefit programs. For example, from January 2008 to July 2009, Omnicare sold drugs to SNF No. 17 for its Medicare Part A beneficiaries at a price of $21.00 per diem, per patient beneficiary. During those same months, for the same drugs, Omnicare charged Medicaid the following prices per diem, per patient beneficiary: $53.77 in January 2008, $59.51 in February 2008, $37.95 in March 2008, $66.16 in April 2008,

$53.58 in May 2008, $48.16 in June 2008, $49.50 in July 2008, $34.12 in August 2008, $45.89 in September 2008, $55.10 in October 2008, $49.30 in November 2008, $51.05 in December 2008, $43.09 in January 2009, $42.76 in February 2009, $31.50 in March 2009, $29.88 in April 2009, $30.16 in May 2009, $28.51 in June 2009, and $35.82 in July 2009. The average price charged to Medicaid during the period of time between January 2008 through July 2009 was $45.76 per diem.

R.      Omnicare has sold drugs to SNF No. 18, and to and for SNF No. 18's Medicare Part A patient beneficiaries, at prices below the prices that it charged others, including Medicaid, for the same drugs, during the same time periods.   In return, Omnicare was able to service substantially all of SNF No. 18's patients, including those for whom claims were made to non-Part A Medicare, Medicaid and/or other federal health benefit programs. For example, from January 2008 to July 2009, Omnicare sold drugs to SNF No. 18 for its Medicare Part A beneficiaries at a price of $21.00 per diem, per patient beneficiary.   During those same months, for the same drugs, Omnicare charged Medicaid the following prices per diem, per patient beneficiary: $42.37 in January 2008, $42.45 in February 2008, $37.83 in March 2008, $42.95 in April 2008, $30.41 in May 2008, $32.89 in June 2008, $35.36 in July 2008, $29.86 in August 2008, $24.87 in September 2008, $45.12 in October 2008, $53.29 in November 2008, $51.33 in December 2008, $64.69 in January 2009, $48.00 in February 2009, $30.55 in March 2009, $53.56 in April 2009, $38.86 in May 2009, $45.31 in June 2009, and $30.23 in July 2009. The average price charged to Medicaid during the period of time between January 2008 through July 2009 was $40.73 per diem.

S.    Omnicare has sold drugs to SNF No. 19, and to and for SNF No. 19's Medicare Part A patient beneficiaries, at prices below the prices that it charged others, including Medicaid, for the same drugs, during the same time periods.  In return, Omnicare was able to service substantially all of SNF No. 19's patients, including those for whom claims were made to non-Part A Medicare, Medicaid and/or other Federal health benefit programs.  For example, from January 2008 to July 2009, Omnicare sold drugs to SNF No. 19 for its Medicare Part A beneficiaries at a price of $21.00 per diem, per patient beneficiary.  During those same months, for the same drugs, Omnicare charged Medicaid the following prices per diem, per patient beneficiary: $41.07 in January 2008, $35.18 in February 2008, $30.71 in March 2008, $38.26 in April 2008, $40.16 in May 2008, $32.55 in June 2008, $38.51 in July 2008, $40.80 in August 2008, $40.37 in September 2008, $38.72 in October 2008, $35.58 in November 2008, $40.58 in December 2008, $34.33 in January 2009, $42.32 in February 2009, $39.47 in March 2009, $49.54 in April 2009, $41.13 in May 2009, $33.90 in June 2009, and $30.45 in July 2009.  The average price charged to Medicaid during the period of time between January 2008 through July 2009 was $38.18 per diem.

T.    Omnicare has sold drugs to SNF No. 20, and to and for SNF No. 20's Medicare Part A patient beneficiaries, at prices below the prices that it charged others, including Medicaid, for the same drugs, during the same time periods.  In return, Omnicare was able to service substantially all of SNF No. 20's patients, including those for whom claims were made to non-Part A Medicare, Medicaid and/or other federal health benefit programs.  For example, from January 2008 to July 2009, Omnicare sold drugs to SNF No. 20 for its Medicare Part A beneficiaries at a price of $22.50 per diem,

per patient beneficiary.  During those same months, for the same drugs, Omnicare charged Medicaid the following prices per diem, per patient beneficiary: $49.42 in January 2008, $35.62 in February 2008, $49.83 in March 2008, $39.35 in April 2008, $47.23 in May 2008, $64.59 in June 2008, $48.90 in July 2008, $42.43 in August 2008, $42.36 in September 2008, $39.72 in October 2008, $34.87 in November 2008, $48.03 in December 2008, $44.05 in January 2009, $42.75 in February 2009, $45.00 in March 2009, $35.44 in April 2009, $45.55 in May 2009, $40.31 in June 2009, and $32.70 in July 2009.  The average price charged to Medicaid during the period of time between January 2008 through July 2009 was $43.69 per diem.

U.     Omnicare has sold drugs to SNF No. 21, and to and for SNF No. 21's Medicare Part A patient beneficiaries, at prices below the prices that it charged others, including Medicaid, for the same drugs, during the same time periods.  In return, Omnicare was able to service substantially all of SNF No. 21's patients, including those for whom claims were made to non-Part A Medicare, Medicaid and/or other federal health benefit programs.  For example, from January 2008 to July 2009, Omnicare sold drugs to SNF No. 21 for its Medicare Part A beneficiaries at a price of $21.00 per diem, per patient beneficiary.  During those same months, for the same drugs, Omnicare charged Medicaid program the following prices per diem, per patient beneficiary: $35.09 in January 2008, $29.79 in February 2008, $35.28 in March 2008, $33.98 in April 2008, $38.95 in May 2008, $27.96 in June 2008, $34.52 in July 2008, $37.76 in August 2008, $25.63 in September 2008, $27.16 in October 2008, $26.18 in November 2008, $34.86 in December 2008, $41.64 in January 2009, $40.58 in February 2009, $34.92 in March 2009, $29.60 in April 2009, $27.78 in May 2009, $32.55 in June 2009, and $33.90 in July

2009.  The average price charged to Medicaid during the period of time between January 2008 through July 2009 was $33.26 per diem.

        V.      Omnicare has sold drugs to SNF No. 22, and to and for SNF No. 22's Medicare Part A patient beneficiaries, at prices below the prices that it charged others, including Medicaid, for the same drugs, during the same time periods.  In return, Omnicare was able to service substantially all of SNF No. 22's patients, including those for whom claims were made to non-Part A Medicare, Medicaid and/or other federal health benefit programs.  For example, from January 2008 to July 2009, Omnicare sold drugs to SNF No. 22 for its Medicare Part A beneficiaries at a price of $21.00 per diem, per patient beneficiary.  During those same months, for the same drugs, Omnicare charged Medicaid the following prices per diem, per patient beneficiary: $33.36 in January 2008, $28.09 in February 2008, $28.95 in March 2008, $40.09 in April 2008, $35.94 in May 2008, $29.76 in June 2008, $33.37 in July 2008, $23.43 in August 2008, $29.88 in September 2008, $27.96 in October 2008, $26.03 in November 2008, $29.68 in December 2008, $24.98 in January 2009, $28.77 in February 2009, $29.88 in March 2009, $34.21 in April 2009, $20.26 in May 2009, $47.93 in June 2009, and $41.28 in July 2009.  The average price charged to Medicaid during the period of time between January 2008 through July 2009 was $31.89 per diem.

### OMNICARE FALSE CLAIMS IN VIOLATION OF MEDICAID AND OTHER "MOST FAVORED CUSTOMER" PRICING LAWS

      34.      Each State that participates in the Medicaid program must submit a plan for approval to the U.S. Department of Health and Human Services.  Upon approval, the State becomes entitled to federal funds.  A State's plan may include among its reimbursable costs expenditures for prescription drugs.  Congress has delegated to the Secretary of Health and

Human Services the authority to make and publish rules and regulations, including regulations intended to control the cost of prescriptions drugs. Federal regulations set upper limits for reimbursements for prescription drugs, and require that State Medicaid plans not pay more than those upper limits. See generally 42 U.S.C. § 1396r-8, 42 C.F.R. §§ 447.302, 447.304(a). Those requirements, and the State laws that implement them, are commonly referred to as "Most Favored Customer" pricing (herein "MFC Pricing"). Accordingly, the MFC Pricing requirement is set forth in the laws of the various States. For example, under Ohio Admin. Code § 5101:3-1-02 provides in relevant part as follows:

> General principles regarding reimbursement for medicaid covered services [except as provided through medicaid contracting managed care plans (MCPs)]
> . . .
>
> (B) The following general principles determine whether a particular medical service is reimbursable:
> . . .
> (7) The consumer receives medical services at the same cost as or less than non-medicaid individuals. . . . the department will not pay for services that are charged at a rate greater than the provider's usual and customary charge to other patients.

35.     Under the MFC Pricing requirements of the various States, including but not limited to Ohio, a pharmacy provider that seeks Medicaid reimbursement must sell its pharmaceutical drugs, services and other supplies to Medicaid beneficiaries at or below the best price offered by the supplier to other, non-Medicaid purchasers.

36.     At all times material to the Complaint, in this District and nationwide, Omnicare has offered and provided pricing to certain SNFs, for the SNFs' Medicare Part A patient beneficiaries, below its Medicaid prices for the same drugs. It has done so in knowing violation of applicable federal and state laws and of its provider agreements.

37.     The Relator has learned and confirmed that Omnicare was offering and providing drugs to select SNFs at prices below the prices that Omnicare was charging Medicaid, and in

some instances, below Omnicare's own costs. On multiple occasions in 2009, he asked Omnicare management and pricing personnel about those pricing decisions. Omnicare management and pricing personnel confirmed to the Relator that Omnicare was engaging in those practices nationwide, and with words to the effect that Omnicare had contracts that were "illegal as hell," that management was "trying to phase them out," that the Relator should not offer such pricing going forward, although there were continued exceptions for certain contract renewals.

38.     In or about November 2009, the Relator visited SNF No. 23, a facility within this District. A representative of SNF No. 23 told the Relator that Omnicare's competitors were low-balling, that is, pricing their Medicare Part A drugs below their Medicaid prices in order to gain the referral of all of a SNF's drug business. The SNF No. 23 representative said to the Relator words to the effect of, "look me in the eye and tell me you don't go below Medicaid." After the visit, the Relator called the Omnicare Regional V.P. The Regional V.P. told the Relator words to the effect, "you could have said there are no contracts that say that." The Relator responded with words to the effect of, "come on, but we do it." The Regional V.P. replied, in substance, "but the contracts don't *say* we do."

39.     On or about November 30, 2009, the Relator had a telephone conversation with an Omnicare financial analyst ("Pricing Manager"). Pricing Manager told the Relator that approximately ten Omnicare client SNFs in Ohio paid a per diem rate that was below Omnicare's own costs for the drugs and supplies. It was understood that Omnicare's Medicaid prices were above cost. The Relator asked Pricing Manager whether that was a nationwide issue. Pricing Manager told the Relator that Omnicare pharmacies all over the country were engaging

in that practice, either currently or in the past, and that the problem was particularly bad in California.

40.    Before the Relator voiced questions and concerns to Omnicare personnel about the company's pricing, to and including 2009, he was required, in the course of his duties, to review and approve pricing worksheets and quotes to be offered under new Omnicare contracts with SNFs. In 2009, after the Relator voiced those questions and concerns to his superiors, he no longer was required or even permitted to approve or even see the offered pricing.

41.    On December 15, 2009, Omnicare's Great Lakes region held a meeting headed by the Regional Vice President ("Regional V.P."). During that meeting, the Regional V.P. said that Omnicare intended to stop using per diem pricing terms for its accounts. An Omnicare employee raised the subject of SNF No. 2's contract with Omnicare. In response, the Regional V.P. told the group that Omnicare intended to change its billing practices for any accounts with per diem rates because there were many accounts on which Omnicare did not make any money due to the significant discounts it was giving on the Medicare Part A beds and its inability to make up the difference in profit from the other beds in the facility. Regional V.P. said that Omnicare would be engaging in fraud if it were to offer low prices on the Medicare Part A beds just to service all of the facility's non-Medicare Part A patients. On October 12, 2009, however, the Regional V.P. had confirmed to the Relator that Omnicare was offering Medicare Part A per diem pricing to SNF No. 1 and SNF No. 2 at rates below the rates it was then charging Medicaid. Those prices had not changed as of the December 15, 2009 meeting, and have not changed as of the date of this Complaint.

42.    Each Medicaid reimbursement claim that Omnicare submitted or caused to be submitted in violation of MFC Pricing requirements is a false claim. By the pricing conduct

described above, Omnicare has submitted, and caused the submission of, false claims for payment to the Medicaid program, federal and state. Defendant Omnicare knew, or was grossly negligent and/or reckless in not knowing, that its pricing practices were violations of MFC Pricing requirements of the federal government and of the various States, including but not limited to Ohio.

43.     Defendant Omnicare has concealed from Medicaid, from the State of Ohio, from the other State agencies and contracted companies that fund and administer Medicaid, and from the Medicaid beneficiaries themselves, the fact that its Medicaid prices were above its Medicare Part A per diem prices, and/or its prompt payment discount prices, to selected SNFs.

44.     Defendant Omnicare's false claims, and its concealment of the facts relevant to those false claims, are material. Neither Medicaid, nor the States nor the contracting companies that fund and administer it, would pay the claims for payment submitted or caused to be submitted by Defendant Omnicare, or would not pay at the rates charged, if they knew those claims were submitted in violation of MFC Pricing requirements.

45.     Omnicare's pricing conduct as described herein has violated Ohio Admin. Code § 5101:3-1-02, as well as similar provisions of the various States and other jurisdictions. In addition, the described conduct has violated the false claims acts of those jurisdictions, including California, Delaware, the District of Columbia, Florida, Georgia, Hawaii, Illinois, Indiana, Louisiana, Massachusetts, Michigan, Minnesota, Montana, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Rhode Island, Tennessee, Texas, Virginia and Wisconsin, and the cities of New York, New York and Chicago, Illinois.

46.     Specific examples, from within this District, of Defendant Omnicare's MFC Pricing violations are set forth in Paragraph 33 above.

{00688674.DOC;3 }                                    30

47.     In some instances, Omnicare and a SNF have agreed to "true-up" the rates for the Medicare Part A per diem pricing, to match its Medicaid pricing levels, at regular intervals. In fact, in many instances, Omnicare had not conducted, and had not intended to conduct, such a "true-up" Instead, it continues those pricing rates indefinitely for the purpose of keeping the referral of the SNFs' other, non-Medicare Part A business, including claims submitted to other Federal health care programs.

48.     In 2009, Omnicare approached SNF No. 2 in an attempt to negotiate increased Part A pricing. SNF No. 2 told Omnicare that it would find another pharmacy to service its entire facility if Omnicare were to raise its Medicare Part A per diem rate. As a result, Omnicare maintained its reduced Part A pricing for SNF No. 2.

49.     In addition to reduced Part A pricing, the prompt payment discounts described above further reduce Omnicare's Medicare Part A prices below the prices that it charges Medicaid for the same items and services.

50.     Omnicare had a long-standing agreement, including below-Medicaid pricing for Medicare Part A drugs, with SNF No. 24. In or about March 2009, during negotiations to extend Omnicare's agreement with SNF No. 24, SNF No. 24 told Omnicare that a competitor of Omnicare had offered SNF No. 24 Medicare Part A pricing below that offered by Omnicare. Omnicare told SNF No. 24 it could not further reduce its Part A pricing, because Omnicare knew that its pricing was already at or below cost. A price below Omnicare's cost would be a price below Omnicare's Medicaid price. SNF No. 24, upon information and belief, then entered into an agreement with the competitor pharmacy for Medicare Part A pricing at a rate even lower than that offered by Omnicare. As a result, Omnicare lost its sales with respect to SNF No. 24's other resident patients, who were then made available by SNF No. 24 to the competitor

pharmacy in return for its Medicare Part A pricing to SNF No. 24, including drugs for which payment may be made by a federal health benefit program.

51.     In or about March 2009, SNF Nos. 7-9 and 25-31, all part of a chain of SNFs, terminated their agreements with Omnicare after an Omnicare competitor offered them Part A per diem pricing that was even lower than that being provided by Omnicare.  When Omnicare did not match the reduced Part A pricing offered by the competitor, upon information and belief, the chain of SNFs, including each of the specific SNFs noted above, entered into an agreement with that competitor for Part A pricing at rates that, as Omnicare management personnel expressed to the Relator, were below the competitor's Medicaid prices.  In return, on information and belief, SNF Nos. 7-9 and 25-31 referred to the competitor their non-Medicare Part A beneficiaries' business, including drugs for which payment may be made by a federal health benefit program.

## OMNICARE KNOWINGLY VIOLATES THE LAW

52.     At all relevant times, Omnicare has known the requirements of the False Claims Act, the Anti-Kickback Statute and the MFC Pricing laws of Ohio and the various States.  At all relevant times, Omnicare has known that its conduct as alleged herein violates those laws. Omnicare's knowledge of the relevant laws is evident in its provider agreements with each federal health care program, and in the reimbursement claims that it submits to those programs. Omnicare's knowledge of the relevant laws is evident in its annual reports, in which it certifies its compliance with the laws and discusses particular legal proceedings, including qui tam actions instituted against it under The False Claims Act.

53.     Omnicare's knowledge of the relevant laws, and of the fact that its conduct has violated those laws, is evident in the discussions, statements and responses of its management personnel alleged in the preceding paragraphs.

54.     Omnicare's knowledge of the laws is evident as well in settlements that it has entered into with the federal government and with the states to resolve false claim and kickback allegations.  In November 2006, for example, Omnicare agreed to pay the United States and 43 States $49.5 million to settle prescription drug fraud claims from 2000 to 2005.  The settlement was the result of qui tam suits brought under The False Claims Act after a joint investigation by the United States Department of Justice and the National Association of Medicaid Fraud Control Units. The United States alleged that Omnicare improperly, and with the use of false statements, switched Medicaid patients from cheaper versions of drugs to more expensive versions solely to increase its reimbursement rates.  As a result, Omnicare entered into a compliance agreement with the United States Department of Health and Human services for a period of five years.  The purpose of such an agreement, in part, is to put procedures and reviews in place to avoid and promptly detect similar conduct.  In November 2009, Omnicare agreed to pay $98 million to the United States and to the states' Medicaid programs.  The settlement resolved qui tam claims that Omnicare received a variety of illegal kickbacks from a drug manufacturer, and paid illegal kickbacks to nursing homes, in connection with drugs that were reimbursed by federal and state health care benefit programs.  Again, Omnicare agreed to enter into a corporate integrity agreement with the Department of Health and Human Services.

## COUNT ONE

**False Claims Based on Medicare Part A Per Diem Pricing Kickbacks**
**Violation of 31 U.S.C § 3729(a)(1); as amended, 3729(a)(1)(A)**

55.     The Relator incorporates as if fully rewritten herein all the allegations, statements and averments contained above.

56.     Since in or about 1999, and continuing through the filing of this Complaint, Defendant Omnicare has knowingly offered and paid illegal kickbacks to SNFs, in the form of reduced Medicare Part A per diem rates, to induce the referral of business for which payment otherwise may have been made by other Federal health care programs.  Each such kickback that resulted in a claim submitted or caused to be submitted by Omnicare to an officer or employee of the United States Government or a member of the Armed Forces of the United States or otherwise was and is a false or fraudulent claim for payment or approval in violation of The False Claims Act, 31 U.S.C. § 3729(a)(1), and as amended, 3729(a)(1)(A).  As to each such false claim, Omnicare acted with knowledge of its falsity, or with grossly negligent or reckless disregard to facts and conditions that would indicate that the claim was inaccurate or inappropriate and false, and caused payments for the claims to be made by the United States government.

## COUNT TWO

**False Claims Based on Medicare Part A Per Diem Pricing Kickbacks**
**Violation of 31 U.S.C § 3729(a)(2); as amended, 3729(a)(1)(B)**

57.     The Relator incorporates as if fully rewritten herein all the allegations, statements and averments contained above.

58.     Since in or about 1999, and continuing through the filing of this Complaint, Defendant Omnicare has knowingly offered and paid illegal kickbacks to SNFs, in the form of reduced Medicare Part A per diem rates, to induce the referral of business for which payment

otherwise may have been made by other Federal health care programs. As to each such kickback, Omnicare knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government, or knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim, in violation of The False Claims Act, 31 U.S.C. § 3729(a)(2), and as amended, 3729(a)(1)(B). As to each such false claim, Omnicare acted with knowledge of its falsity, or with grossly negligent or reckless disregard to facts and conditions that would indicate that the claim was inaccurate or inappropriate and false, and caused payments for the claims to be made by the United States government.

### COUNT THREE

**False Claims Based on Prompt Payment Discount Kickbacks**
**Violation of 31 U.S.C § 3729(a)(1); as amended, 3729(a)(1)(A)**

59.     The Relator incorporates as if fully rewritten herein all the allegations, statements and averments contained above.

60.     Since in or about 1999, and continuing through the filing of this Complaint, Defendant Omnicare has knowingly offered and paid illegal kickbacks to SNFs, in the form of prompt payment discounts, whether or not the SNFs paid promptly, to induce the referral of business for which payment otherwise may have been made by other Federal health care programs. Each such kickback that resulted in a claim submitted or caused to be submitted by Omnicare to an officer or employee of the United States Government or a member of the Armed Forces of the United States, or otherwise, was and is a false or fraudulent claim for payment or approval in violation of The False Claims Act, 31 U.S.C. § 3729(a)(1)., and as amended, 3729(a)(1)(A). As to each such false claim, Omnicare acted with knowledge of its falsity, or with grossly negligent or reckless disregard to facts and conditions that would indicate that the

{00688674.DOC;3 }                                    35

claim was inaccurate or inappropriate and false, and caused payments for the claims to be made by the United States government.

## COUNT FOUR

**False Claims Based on Prompt Payment Discount Kickbacks**
**Violation of 31 U.S.C § 3729(a)(2); as amended, 3729(a)(1)(B)**

61.     The Relator incorporates as if fully rewritten herein all the allegations, statements and averments contained above.

62.     Since in or about 1999, and continuing through the filing of this Complaint, For at least 10 years prior to the filing of this Complaint, Defendant Omnicare has knowingly offered and paid illegal kickbacks to SNFs, in the form of prompt payment discounts, whether or not the SNFs paid promptly, to induce the referral of business for which payment otherwise may have been made by other Federal health care programs.  As to each such kickback, Omnicare knowingly made, used, or caused to be made or used a false record or statement to get a false or fraudulent claim paid or approved by the Government, or knowingly made, used, or caused to be made or used a false record or statement material to a false or fraudulent claim, in violation of The False Claims Act, 31 U.S.C. § 3729(a)(2), and as amended, 3729(a)(1)(B).  As to each such false claim, Omnicare acted with knowledge of its falsity, or with grossly negligent or reckless disregard to facts and conditions that would indicate that the claim was inaccurate or inappropriate and false, and caused payments for the claims to be made by the United States government.

## COUNT FIVE

**False Claims Based on Medicare Part A Per Diem Pricing and Prompt Payment Discounts
In Violation of MFC Pricing Laws
Violation of 31 U.S.C § 3729(a)(1); as amended, 3729(a)(1)(A)**

63.     The Relator incorporates as if fully rewritten herein all the allegations, statements and averments contained above.

64.     Since in or about 1999, and continuing through the filing of this Complaint, Defendant Omnicare, by virtue of the Medicare Part A per diem rates and prompt payment discounts described above, has charged Medicaid higher prices, and has sought reimbursement from Medicaid and the federal and state agencies that fund and administer it at higher prices, than the prices that it has charged other non-medicaid individuals, entities or programs. In so doing, Omnicare has violated Ohio Admin. Code 5101:3-1-02(b)(7), the laws of the various States, and its provider agreements. Each such claim or charge from or through Omnicare to Medicaid was and is a false or fraudulent claim for payment or approval in violation of The False Claims Act, 31 U.S.C. § 3729(a)(1), and as amended, 3729(a)(1)(A). As to each such false claim, Omnicare acted with knowledge of its falsity, or with grossly negligent or reckless disregard to facts and conditions that would indicate that the claim was inaccurate or inappropriate and false, and caused payments for the claims to be made by the United States government.

## COUNT SIX

**False Claims Based on Medicare Part A Per Diem Pricing and Prompt Payment Discounts
In Violation of MFC Pricing Laws
Violation of 31 U.S.C § 3729(a)(2); as amended, 3729(a)(1)(B)**

65.     The Relator incorporates as if fully rewritten herein all the allegations, statements and averments contained above.

{00688674.DOC;3 }                                    37

66.     Since in or about 1999, and continuing through the filing of this Complaint, Defendant Omnicare, by virtue of the Medicare Part A per diem rates and prompt payment discounts described above, has charged Medicaid higher prices, and has sought reimbursement from Medicaid and the federal and state agencies that fund and administer it at higher prices, than the prices that it charges other non-medicaid individuals, entities or programs.  In so doing, Omnicare has violated Ohio Admin. Code 5101:3-1-02(b)(7), the laws of the various States, and its provider agreements.   In submitting each such claim or charge to Medicaid, directly or indirectly, Defendant Omnicare knowingly made used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government, or has knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim, in violation of The False Claims Act, 31 U.S.C. § 3729(a)(2), and as amended, 3729(a)(1)(B).   As to each such false claim, Omnicare acted with knowledge of its falsity, or with grossly negligent or reckless disregard to facts and conditions that would indicate that the claim was inaccurate or inappropriate and false, and caused payments for the claims to be made by the United States government.

## COUNT SEVEN

**False Claims Based on Fraudulent Concealment of and Failure to Repay Funds Obtained From Billing Practices That Led to False Claims Described in Counts One through Six Violation of 31 U.S.C § 3729(a)(7); as amended, 3729(a)(1)(G)**

67.     The Relator incorporates as if fully rewritten herein all the allegations, statements and averments contained above.

68.     Since in or about 1999, and continuing through the filing of this Complaint, Defendant Omnicare has knowingly made, used, or caused to be made or used, a false record or statement to conceal, avoid, or decrease its obligations to pay or transmit money or property to the Government within the meaning of 31 U.S.C § 3729(a)(7).

{00688674.DOC;3 }                                    38

69.    Since in or about 1999, and continuing through the filing of this Complaint, Defendant Omnicare has knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government within the meaning of 31 U.S.C § 3729(a)(1)(G).

70.    At all relevant times, Omnicare has failed to repay to the United States Government the funds that it knowingly obtained and retained through the submission of the false claims alleged in Counts One through Six of this Complaint, or to report its material false records or statements to the Government.  In submitting each false or fraudulent claim described herein, in failing to report the material falsity of its false records or statements, and in concealing the material falsity of those records or statements, Omnicare has knowingly avoided and decreased its obligation to repay moneys that it has received from the Government in payment of those false claims.  It has done so with actual knowledge of the falsity of its claims and of the information on which those claims were based, in deliberate ignorance of the truth or falsity thereof, or in reckless disregard of the truth or falsity thereof.

## PRAYER FOR RELIEF

**WHEREFORE,** the Relator, individually and on behalf of the United States, prays that judgment be entered as follows:

(a)      COUNT ONE: for an award of damages against Defendant Omnicare resulting from its violations of 31 U.S.C. § 3729(a)(1), and as amended § 3729(a)(1)(A), which sums shall be trebled in addition to penalties of not less than $5,500 per violation and not more than $11,000, together with attorneys' fees and costs;

(b)      COUNT TWO: for an award of damages against Defendant Omnicare resulting from its violations of 31 U.S.C. § 3729(a)(2), and as amended § 3729(a)(1)(B), which sums shall be trebled in addition to penalties of not less than $5,500 per violation and not more than $11,000, together with attorneys' fees and costs;

(c)      COUNT THREE: for an award of damages against Defendant Omnicare resulting from its violations of 31 U.S.C. § 3729(a)(1), and as amended § 3729(a)(1)(A), which sums shall be trebled in addition to penalties of not less than $5,500 per violation and not more than $11,000, together with attorneys' fees and costs;

(d)      COUNT FOUR: for an award of damages against Defendant Omnicare resulting from its violations of 31 U.S.C. § 3729(a)(2), and as amended § 3729(a)(1)(B), which sums shall be trebled in addition to penalties of not less than $5,500 per violation and not more than $11,000, together with attorneys' fees and costs;

(e)      COUNT FIVE: for an award of damages against Defendant Omnicare resulting from its violations of 31 U.S.C. § 3729(a)(1), and as amended § 3729(a)(1)(A), which sums shall be trebled in addition to penalties of not less than $5,500 per violation and not more than $11,000, together with attorneys' fees and costs;

(f)      COUNT SIX: for an award of damages against Defendant Omnicare resulting from its violations of 31 U.S.C. § 3729(a)(2), and as amended § 3729(a)(1)(B), which sums shall be trebled in addition to penalties of not less than $5,500 per violation and not more than $11,000, together with attorneys' fees and costs;

(g)     COUNT SEVEN:    for an award of damages against Defendant Omnicare resulting from its violations of 31 U.S.C. § 3729(a)(7), and as amended § 3728(a)(1)(G), which sums shall be trebled in addition to penalties of not less than $5,500 per violation and not more than $11,000, together with attorneys' fees and costs;

(h)     On all Counts, for an award of the Relator's reasonable expenses plus attorney's fees and costs, pursuant to 31 U.S.C § 3730(d)(1); and

(j)     For any other relief, legal or equitable, that the Court deems appropriate.


VIRGINIA A. DAVIDSON  (0025773)
LAURA C. MCBRIDE  (0080059)
ERIC S. ZELL (0084318)
CALFEE, HALTER & GRISWOLD LLP
1400 KeyBank Center
800 Superior Avenue
Cleveland, Ohio 44114
216-622-8200
216-241-0816:  fax
vdavidson@calfee.com
lmcbride@calfee.com
ezell@calfee.com

*Attorneys for Relator Donald Gale*

## CERTIFICATE OF SERVICE

A copy of the foregoing Complaint was filed under seal pursuant to 31 U.S.C. § 3730(b)(2), and was served upon the United States Attorney General and upon the United States Attorney for the Northern District of Ohio, as set forth below, pursuant to 31 U.S.C. § 3730(b)(2) and Rule 4 of the Federal Rules of Civil Procedure, and in conformity with the Local Rules of this Court, upon the following:

Via Hand Delivery:

Steven M. Dettlebach
United States Attorney for the Northern District of Ohio
801 West Superior Avenue, Suite 400
Cleveland, Ohio 44113-1852

Via Federal Express Overnight Delivery:

United States Attorney General Eric Holder
950 Pennsylvania Ave. NW
Washington D.C. 20530

Laurie Oberembt
Senior Trial Attorney
601 D St., N.W., Rm. 9108
Washington D.C. 20004

_____
An Attorney for Plaintiff-Relator Donald Gale

{00688674.DOC;3 }                              42