UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CASE NO. 1:10CV127 |
| ex rel. DONALD GALE, ) | |
|    Plaintiff-Relator, ) | JUDGE CHRISTOPHER A. BOYKO |
| ) | |
| vs. ) | **OPINION AND ORDER** |
| ) | |
| OMNICARE, INC., ) | |
| ) | |
|    Defendant. ) | |

**CHRISTOPHER A. BOYKO, J.:**

This matter comes before the Court upon the Motion (ECF DKT #26) of Defendant, Omnicare, Inc., to Dismiss Complaint. For the following reasons, the Motion is granted in part and denied in part.

**I. FACTUAL BACKGROUND**

Plaintiff-Relator, Donald Gale ("Relator"), worked for Defendant, Omnicare, Inc., from 1994 to 2010, as a consulting pharmacist, director, director of operations, vice president of operations and general manager of its Wadsworth, Ohio pharmacy, until his voluntary resignation in early 2010. During his sixteen years with Omnicare, Relator learned firsthand of the conduct described in the Complaint. He was "required, in the course of his duties, to

review and approve pricing worksheets and quotes to be offered under new Omnicare contracts with SNF's." (Complaint, ¶ 40).  Relator had conversations with Omnicare pricing managers and executives; and thus, was allegedly in a position to know about pricing irregularities and about the manner in which Omnicare submitted claims for payment by the federal government.  (*Id*., ¶ 14-18).

       Omnicare is a leading supplier of prescription drugs to long-term care facilities, including skilled nursing facilities ("SNF's").  Relator alleges that the Wadsworth Omnicare pharmacy alone processes more than 140,000 prescriptions per month – more than half of them are prescriptions for which payment is sought and received from federally funded health care programs, such as Medicare or Medicaid.  Medicare is a federal health insurance program that covers people over 65 or with certain disabilities, and that has four parts: Part A (Hospital); Part B (Medical); Part C (HMO and PPO Plans); and Part D (Prescription Drug Coverage).  SNF's receive a flat per diem rate for their Part A patients, which includes drug costs, whether a Part A patient requires no drugs or several expensive drugs.  SNF's enter into per diem contracts with pharmacies, such as Omnicare, under which SNF's pay the pharmacy a fixed daily rate to cover prescription drugs for each Part A patient.  Medicaid is a cooperative federal-state program that covers medical care, including SNF care, primarily to low income and disabled persons.  Rather than a negotiated rate, a per diem, or invoiced charges, Medicaid pays the pharmacy fixed rates set by regulation based on estimated drug cost for each drug dispensed.

       Relator's Complaint alleges that Omnicare solicits contracts from SNF's, and offers per diem pricing for Medicare Part A patients, to induce an SNF to refer to Omnicare the

furnishing, or the arranging for furnishing of, drugs to the balance of its patients. Then, Omnicare can bill public insurance programs for these patient referrals. Allegedly, Omnicare offers and provides per diem pricing at rates, below the prices it charges other SNF's, other customers for Medicare Part A patients, and even below its own costs. In addition, Omnicare is alleged to offer and provide "prompt payment" discounts as an inducement to SNF's, regardless of whether they promptly pay. This practice, of paying remuneration for the purpose of inducing referrals, is "swapping," which violates the Medicare Anti-Kickback Statute. Relator's pleading describes arrangements between Omnicare and twenty-two SNF's, prices and time frames, and interactions/conversations with upper-level Omnicare executives.

Relator's Complaint is a *qui tam* action[1], brought pursuant to the Federal False Claims Act, 31 U.S.C. §§ 3729-3733 (1994) ("FCA"); and it has seven counts:

**Count One** - False Claims Based on Medicare Part A Per Diem Pricing Kickbacks (Violation of 31 U.S.C. § 3729(a)(1); as amended, 3729(a)(1)(A))

**Count Two** - False Claims Based on Medicare Part A Per Diem Pricing Kickbacks (Violation of 31 U.S.C. § 3729(a)(2); as amended, 3729(a)(1)(B))

**Count Three** - False Claims Based on Prompt Payment Discount Kickbacks (Violation of 31 U.S.C. § 3729(a)(1); as amended, 3729(a)(1)(A))

**Count Four** - False Claims Based on Prompt Payment Discount Kickbacks (Violation

---

[1] "Qui tam" is an abbreviation for the Latin phrase "qui tam pro domino rege quam pro si ipso in hac parte sequitur," meaning "who sues on behalf of the King as well as for himself." Black's Law Dictionary 1251 (6th ed.1990). A qui tam action is an action "brought by an informer, under a statute which establishes a penalty for the commission or omission of a certain act ..., part of the penalty to go to any person who brings such action and the remainder to the state or some other institution." *Id*.

of 31 U.S.C. § 3729(a)(2); as amended, 3729(a)(1)(B))

**Count Five** - False Claims Based on Medicare Part A Per Diem Pricing and Prompt Payment Discounts in Violation of MFC [Most Favored Customer] Pricing Laws (Violation of 31 U.S.C. § 3729(a)(1); as amended, 3729(a)(1)(A))

**Count Six** - False Claims Based on Medicare Part A Per Diem Pricing and Prompt Payment Discounts in Violation of MFC Pricing Laws (Violation of 31 U.S.C. § 3729(a)(2); as amended, 3729(a)(1)(B))

**Count Seven** - False Claims Based on Fraudulent Concealment of and Failure to Repay Funds Obtained from Billing Practices That Led to False Claims Described in Counts One through Six (Violation of 31 U.S.C. § 3729(a)(7); as amended, 3729(a)(1)(G))

Defendant Omnicare has moved for dismissal, arguing that the Complaint fails to state a claim upon which relief may be granted pursuant to Fed.R.Civ.P. 12(b)(6); that the Court lacks subject matter jurisdiction over this False Claims Act lawsuit because the Complaint is barred by prior public disclosure under 31 U.S.C. § 3730(e)(4)(A); and the Complaint fails to state with particularity the circumstances constituting fraud, as required by Fed.R.Civ.P. 9(b). Briefing on the Motion is complete and the matter is ripe for the Court's consideration.

## II. LAW AND ANALYSIS

**Standard of Review**

When a motion to dismiss for failure to state a claim under Rule 12(b)(6) is filed, the Complaint is assessed pursuant to Fed.R.Civ.P. 8(a)(2). Rule 8(a)(2) requires that the Complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The pleadings requirement is no longer governed by the lower threshold of

the "no-set-of-facts" standard established in *Conley* v. *Gibson,* 355 U.S. 41 (1957).  Rather, a well-pleaded complaint alleges enough facts, that, if accepted as true, "raise the right to relief above the speculative level." *Bell Atlantic Corp.* v. *Twombly,* 550 U.S. 544, 555 (2007). While "detailed factual allegations" are not required, the facts garnered must be sufficient to "state a claim to relief that is plausible on its face." *Ashcroft* v. *Iqbal,* 129 S.Ct. 1937, 1949-50 (2009).  While there was initial concern about the scope of the plausibility standard set forth in *Twombly*; the Supreme Court clarified two years later, in *Iqbal,* that the new pleading standard applied "to all civil actions." *Boroff v. Alza Corp.,* 685 F. Supp.2d 704, 707 (N.D. Ohio 2010) (quoting *Iqbal,* 129 S.Ct. at 1953).  The universal applicability of the plausibility standard is rooted in the Supreme Court's interpretation and application of Rule 8, which governs "all civil actions and proceedings in the United States district courts," as set forth in Fed.R.Civ.P. 1.  *Iqbal, 129* S.Ct. at 1953.

"In reviewing a motion to dismiss, we construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff."  *Directv, Inc.* v. *Treesh,* 487 F.3d 471,476 (6th Cir. 2007).

**Subject Matter Jurisdiction**

It is well-settled that the Court has "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006); *Freeland v. Liberty Mutual Fire Insurance Co.*, 632 F.3d 250, 252 (6th Cir.2011).  Therefore, the Court is obliged to address Defendant's jurisdictional argument first.  Defendant insists that the entire premise of Relator's Complaint was previously disclosed in an Ohio administrative audit, an

administrative hearing, and in the Ohio courts, and was found to be meritless. *Omnicare Respiratory Servs. v. Ohio Dep't of Job & Family Servs.*, No. 09AP-547, 2010 WL 628656 (Ohio App. 10th Dist. Feb.23, 2010). Plaintiff counters that the *Omnicare Respiratory Services* decision followed the date of this Complaint by a month; that the decision involves Omnicare Respiratory Services, LLC, a separate corporation from the Defendant here; that the subject matter there was oxygen services and not pharmaceuticals; and that, while concerning billing, there is no mention of providing below-cost services to Part A patients at SNF's, in order to obtain the referral of all other patients' pharmacy services.

The FCA allows a private individual to bring a civil action for violation of 31 U.S.C. § 3729; and the individual brings the action as a "relator," acting on behalf of the United States government. The government may recover treble damages from anyone who has committed a fraud upon the government, and the relator may receive up to thirty percent of the money recovered. 31 U.S.C. § 3730(d)(2). "Congress has placed some jurisdictional limits on qui tam actions, however, in the interest of avoiding parasitic suits." *United States, ex rel. McKenzie v. BellSouth Telecommunications, Inc.*, 123 F.3d 935, 938 (6th Cir.1997). The jurisdictional bar of the FCA, 31 U.S.C. § 3730(e)(4)(A) and (B), provides:

> (4)(A) No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.
>
> (B) For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing the action under this section which is based on the

information.

The Sixth Circuit, in *United States ex rel. Jones v. Horizon Healthcare Corporation*, 160 F.3d 326, 330 (6th Cir.1998), broke down the Court's inquiry of the jurisdictional bar into its elemental parts as follows: "(A) whether there has been a public disclosure in a criminal, civil or administrative hearing; or congressional, administrative, or government report, hearing, audit, or investigation; or from the news media; (B) of the allegations or transactions that form the basis of the relator's complaint; and (C) whether the relator's action is "based upon" the publicly disclosed allegations or transactions." *Id.* Further, "[i]f the answer is "no" to any of these questions, the inquiry ends and the qui tam action may proceed. If the answer to each of the above questions is "yes," then the final inquiry is (D) whether the relator qualifies as an "original source" under §3730(e)(4)(B), which also would allow the suit to proceed." *Id.*

The *Omnicare Respiratory Services* matter, highlighted by Defendant, is a public disclosure, because there was an audit of Omnicare Respiratory Services, a Medicaid provider and a supplier of oxygen services to nursing homes and long-term care facilities, by the Auditor of State, for the period from April 1, 2003 through March 21, 2005. That was followed by an administrative hearing before the Ohio Department of Job and Family Services, which adopted the Auditor of State's finding of overpayments totaling $1,978,108.65. On appeal to the Franklin County Court of Common Pleas, the matter was remanded to determine the appropriate Medicaid reimbursement rate. The Tenth District Court of Appeals affirmed in part, reversed in part, and remanded with instructions.

Based upon this procedural history, the *Omnicare Respiratory Services* matter predated Relator's Complaint by some years.

Omnicare Respiratory Services LLC is a wholly-owned subsidiary of Defendant. The Sixth Circuit has applied the public disclosure jurisdictional bar, even though the previous public disclosure dealt with a subsidiary. *McKenzie*, 123 F.3d at 940.

The argument that one case involves oxygen services, while this case concerns pharmaceutical services, is of no moment.

However, the Court must determine "whether substantial identity exists between the publicly disclosed allegations or transactions and the qui tam complaint" before it. *Horizon Healthcare*, 160 F.3d at 332. The Court finds it does not. In *Omnicare Respiratory Services*, the focus was upon billing and/or pricing discrepancies, and upon the Auditor's "flawed" calculation of oxygen charges to the nursing homes. The Franklin County Appellate Court found that the Ohio Department of Job and Family Services "was bound by its own regulations to first establish Omnicare's usual and customary charge for the oxygen actually used by the recipient," before concluding that Omnicare had received overpayments. There was no reference to fraud, nor any accusation of fraudulent claims being submitted. The publicly-disclosed allegations or transactions were inadequate "to set the government squarely on the trail of fraud." *McKenzie*, 123 F.3d at 940, citing *United States ex rel. Fine v. Sandia Corp.*, 70 F.3d 568 (10th Cir.1995). Thus, the public disclosure bar does not apply, the Court possesses subject matter jurisdiction, and the instant *qui tam* lawsuit may proceed.

**Statute of Limitations**

The FCA's statute of limitations provides:

> A civil action under section 3730 may not be brought -
> (1) more than 6 years after the date on which the violation of Section 3729 is committed, or

-8-

> (2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed, whichever occurs last.

The within Complaint was filed on January 19, 2010, and it alleges FCA violations dating back to 1999. Defendant contends that 31 U.S.C. § 3731(b)(1) bars an action "more than 6 years after the date on which the violations" purportedly were committed. In his Opposition Memorandum, Relator offers only a conclusory footnote, claiming the benefit of the 10-year statute of limitations in 31 U.S.C. § 3731(b)(2).

Upon review of the applicable case law, the Court notes that the Sixth Circuit has not directly decided this statute of limitations issue. Nevertheless, the Court agrees with the analysis in *United States ex rel. SNAPP, Inc. v. Ford Motor Company*, No. 06-11848, 2006 WL 2583257, *4 (E.D.Mich. Sept. 7, 2006); and is comfortable in holding that the 6-year statute of limitations governs Relator's Complaint:

> The plain language of the statute makes clear that the statute of limitations is six years for a *Qui Tam* action. Section (b)(2) only applies to claims by the government. Although the Court of Appeals for the Sixth Circuit has not directly decided the issue, they have approved of this approach, at least by implication...[i]n *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873 (6th Cir.2006).

Therefore, all claims in Relator's Complaint, which pre-date January 19, 2004, are barred by the FCA's statute of limitations.

**Counts V and VI - Most Favored Customers Claims**

The factual allegations in Counts V and VI of Relator's Complaint are not sufficient to "state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949-50. Relator

alleges that Defendant, "by virtue of the Medicare Part A per diem rates and prompt payment discounts ..., has charged Medicaid higher prices, and has sought reimbursement from Medicaid and the federal and state agencies that fund and administer it at higher prices, than the prices that it has charged other non-medicaid (sic) individuals, entities or programs. In so doing, Omnicare has violated Ohio Admin. Code 5101:3-1-02(b)(7), the laws of the various States, and its provider agreements." (Complaint, ¶¶ 64, 66). Defendant asserts that, contrary to Relator's allegations, there is no Medicaid MFC requirement. The Court agrees.

Ohio Admin. Code 5101:3-1-02(B)(7) recites, with regard to principles for reimbursable medical service, that:

> The consumer receives medical services at the same cost as or less than non-medicaid individuals ... the department will not pay for services that are charged at a rate greater than the provider's usual and customary charge to other patients.

The Court does not discern, from this language, a "most favored customer" requirement. Moreover, Defendant points out that the phrase dealing with medical services "at the same cost as or less than non-medicaid individuals" has been removed from the Administrative Code section. Also, Relator's references to "best price" in the Medicaid statute, 42 U.S.C. § 1396r-8(c)(1)(C)(i), are unavailing, because the statute deals with pharmaceutical manufacturers and not to pharmacies. Medicaid does require reimbursable charges to be based upon the pharmacy's "usual and customary" charges. Relator does not allege that Omnicare exceeded that limitation. Lastly, Relator cannot depend upon the "best price" requirement in the California Code of Regulations, which he cites in his Brief in Opposition. Defendant has had no opportunity to defend that claim, raised for the first time in a brief.

-10-

Relator has offered no facts about Omnicare's pricing practices in California, or about its Medicaid reimbursements in that state.

Counts V and VI of Relator's Complaint cannot survive dismissal.

**Count VII - Reverse False Claim Allegations**

> [W]hatever the scope of the phrase "obligation to pay or transmit money or property to the Government," 31 U.S.C. § 3729(a)(7), a plaintiff may not state a reverse false claim unless the pertinent obligation attached *before* the defendant made or used the false record or statement. *American Textile Manufacturers Institute, Inc. v. The Limited, Inc.*, 190 F.3d 729, 734 (6th Cir.1999).

Essentially, Relator's Complaint, at Count VII, attempts to allege that the FCA was violated not only by submission by Omnicare of an alleged false claim for payment, but was violated again by not repaying the proceeds. Relator provides no facts supportive of this Count other than his own allegations made in Counts I through VI. Furthermore, Relator provides no argument in opposition to Defendant's request for dismissal of Count VII. Such "bootstrapping," without enough facts to "raise a right to relief above the speculative level," subjects Count VII to dismissal under the *Twombly-Iqbal* standard.

**Counts I through IV of Relator's Complaint**

Construing the Complaint most favorably to Relator, and drawing all reasonable inferences in Relator's favor, the Court determines that the remainder of the Complaint, Counts I through IV, for alleged FCA violations from January of 2004 forward, state claims to relief that survive dismissal under Fed.R.Civ.P. 12(b)(6) and Fed.R.Civ.P. 9(b).

Counts I through IV can be summarized as follows: Relator alleges that Defendant Omnicare offered pricing discounts to nursing homes for the provision of drugs covered by

-11-

the homes' per diem, per-patient Medicare Part A reimbursements, as an inducement for patient referrals for which Omnicare could bill public insurance programs. This practice of "swapping" constitutes the payment of remuneration with the intent of inducing referrals, thus violating the Anti-Kickback Statute. Claims submitted to federal programs, including Medicare or Medicaid, resulting from such arrangements violate the False Claims Act.

Relator alleges at ¶ 24 of his Complaint:

Omnicare solicits contracts from those SNFs, and offers the diem (sic) pricing to those SNFs, to induce the SNFs to refer to Omnicare the furnishing or the arranging for the furnishing of drugs to the balance of the SNFs' patients. Omnicare offers and provides per diem pricing at rates, adjusted for patient population and drug mix, that are below the prices it charges other SNFs or other customers for Medicare Part A patients, below the prices it charges Medicaid for the same mix of drugs and supplies, below the prices it charges to other customers generally, and even, in some instances, below its own costs.

Further at ¶ 25 of the Complaint:

... Omnicare has offered and provided "prompt payment" discounts to selected SNFs to which it has offered and given the per diem pricing described above, to induce those SNFs to refer to Omnicare the furnishing or the arranging for the furnishing of drugs to the balance of the SNFs' patients. Omnicare has offered and provided that discount, as much as 17.4%, to those SNFs regardless of whether they promptly pay.

At ¶ 26: "The per diem pricing and prompt payment discounts described above are remuneration within the meaning of the Anti-Kickback Statute."

Relator alleges in ¶ 31 of his Complaint:

At all material times, Defendant Omnicare knew, or was grossly negligent and/or reckless in not knowing, that the practices described herein were kickbacks in violation of 42 U.S.C. § 1320a-7b. Omnicare knew, or was grossly negligent and/or reckless in not knowing, that the claims that it was submitting, and causing the submission of, to Medicare Part A, based on those kickbacks, were false and/or fraudulent.

In ¶¶ 33 A – V, Relator offers examples of per diem pricing and prompt payment discounting activities (including dates and specific drug costs) with respect to 22 SNF's in this District; and alleges that Omnicare made claims to Medicare for reimbursement for the described drugs.  He alleges: "In 2009, Omnicare management and pricing personnel confirmed to the Relator, in response to concerns voiced by him, that the conduct of Omnicare, as described above, occurs and has occurred nationwide, for many years, as a matter of Omnicare policy." (Complaint, ¶ 33).

In order to demonstrate that Omnicare acted with the requisite intent, Relator makes allegations such as the following in ¶ 41 of his Complaint:

> On December 15, 2009, Omnicare's Great Lakes region held a meeting headed by the Regional Vice President ("Regional V.P."). ... Regional V.P. said that Omnicare would be engaging in fraud if it were to offer low prices on the Medicare Part A beds just to service all of the facility's non-Medicare Part A patients.  On October 12, 2009, however, the Regional V.P. had confirmed to the Relator that Omnicare was offering Medicare Part A per diem pricing to SNF No. 1 and SNF No. 2 at rates below the rates it was then charging Medicaid.  Those prices had not changed as of the December 15, 2009 meeting, and have not changed as of the date of this Complaint.

In light of these, and other lengthy recitals in the pleading, the Court is satisfied that Relator has satisfactorily alleged that Omnicare paid remuneration to SNF's; that there is a connection between the alleged remuneration and the referral of federally-reimbursed business to Omnicare; and that Omnicare acted with the requisite intent.

Defendant contends that, because the FCA is a fraud statute, the Complaint must be closely scrutinized for compliance with the heightened pleading requirement of Fed.R.Civ.P. 9(b) to "state with particularity the circumstances constituting the fraud." *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 641-42 (6th Cir.2003).  Defendant argues

that Relator fails to identify a single specific allegedly false claim submitted by Omnicare.

The Court finds that Defendant is correct about the heightened *qui tam* pleading standard.

> Complaints alleging FCA violations must comply with Rule 9(b)'s requirement that fraud be pled with particularity because "defendants accused of defrauding the federal government have the same protections as defendants sued for fraud in other contexts." *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 466 (6th Cir.2011) (quoting *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir.2003)).

The particularly relevant elements of the FCA claim are the "fraudulent scheme" and the "misrepresentation" — the actual presentment of a false claim to the government. *Chesbrough*, 655 F.3d at 467.

Although Defendant is justified in pointing out that Relator has not identified specific claims for payment from the federal government, the Sixth Circuit law in this area leaves "open the possibility that a court may "relax" the requirements of Rule 9(b) 'in circumstances where a relator demonstrates that he cannot allege the specifics of actual false claims that in all likelihood exist, and the reason that the relator cannot produce such allegations is not attributable to the conduct of the relator.'" *Chesbrough*, 655 F.3d at 470 (citing *United States ex rel. Bledsoe v. Community Health Systems*, 501 F.3d 493, 504 (6th Cir.2007)).

> The case law just discussed suggests that the requirement that a relator identify an actual false claim may be relaxed when, even though the relator is unable to produce an actual billing or invoice, he or she has pled facts which support a strong inference that a claim was submitted. Such an inference may arise when the relator has "personal knowledge that the claims were submitted by Defendants ... for payment." *Chesbrough*, 655 F.3d at 471. (citations omitted).

The Court finds that the allegations of the Complaint support the reasonable inference that Relator possesses knowledge of Omnicare's pricing practices; and that claims, resulting from

-14-

the alleged "swapping" scheme, were submitted to Medicare or Medicaid.  Relator worked for Omnicare for sixteen years, as a consulting pharmacist, director of operations, vice president of operations, and executive director at the Wadsworth facility. (Complaint, ¶ 1).  In the course of his duties, Relator was required "to review and approve pricing worksheets and quotes to be offered under new Omnicare contracts with SNFs." (Complaint, ¶ 40).  Relator had conversations with pricing managers and executives; and thus, obtained knowledge of pricing and the manner that claims were submitted for payment by the federal government.  (Complaint ¶¶ 39-41).  Relator specifically alleges that: "In 2009, after the Relator voiced those questions and concerns to his superiors, he no longer was required or even permitted to approve or even see the offered pricing."  (Complaint, ¶ 40).

      The Court finds that Relator has pled facts to support a strong inference that false claims were submitted, as well as facts allowing the reasonable inference that he, through no fault of his own, could not produce actual examples of false claims submitted for payment.  Thus, Relator has satisfactorily alleged the required elements of a False Claims Act violation, including the 9(b) fraud standard, because he is entitled to the benefit of the "relaxed" analysis suggested in *Bledsoe* and *Chesbrough*.

### III. CONCLUSION

      For all these reasons, the Motion (ECF DKT #26) of Defendant, Omnicare, Inc., to Dismiss Complaint is granted in part and denied in part.  The Court has subject matter jurisdiction over this action because the public disclosure bar in 31 U.S.C. § 3730(e)(4) does not apply.  The statute of limitations in 31 U.S.C. § 3731(b)(1) bars any of Relator's claims which pre-date January 19, 2004.  Counts V, VI and VII are dismissed pursuant to

Fed.R.Civ.P. 12(b)(6). Counts I through IV sufficiently state claims upon relief may be granted, satisfy the specificity requirements of Fed.R.Civ.P. 9(b), and remain pending for further adjudication.

    **IT IS SO ORDERED.**

                                  **s/ Christopher A. Boyko**
                                  **CHRISTOPHER A. BOYKO**
                                  **United States District Judge**

**Dated: September 26, 2012**