UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

------------------------------------------------------
                                    :
THE UNITED STATES OF AMERICA        :
*ex rel.* DONALD GALE                :          CASE NO. 1:10-CV-00127
                                    :
            Plaintiff,              :
                                    :
    v.                              :          OPINION & ORDER
                                    :          [Resolving Docs. 106, 107, 115]
OMNICARE, INC.,                     :
                                    :
            Defendant.              :
                                    :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

    In this *qui tam* action, Relator David Gale, on behalf of the United States, says that Defendant

Omnicare, Inc., gave skilled nursing facilities discounts on Medicare Part A services in exchange

for referrals of other patients with government-reimbursable drug costs.[1]  Gale says that these

discounts are kickbacks that violate the Medicare Anti-Kickback Statute[2] and make Medicare

reimbursements fraudulent.[3]  He sues on behalf of the United States under the False Claims Act.

    Relator Gale and Defendant Omnicare both move under Federal Rule of Evidence 702 to stop

the expert testimony of the other side's expert.[4]  For the reasons that follow, the Court **GRANTS**

**IN PART** and **DENIES IN PART** Relator Gale's motion and **DENIES** Defendant Omnicare's

motion.

---

[1] Doc. 1 at ¶¶ 24-25.
[2] 42 U.S.C. § 1320a-7b(a)(3).
[3] Doc. 1 at ¶ 5.
[4] Docs. 106, 107.

Case No. 1:10-CV-00127
Gwin, J.

## I. Factual and Procedural Background

In several earlier Opinions and Orders, the Court summarized Gale's complaint.[5/]  Defendant Omnicare supplies prescription drugs to long-term healthcare facilities, including many Medicare-certified Skilled Nursing Facilities ("SNFs").[6/]  Relator Gale worked for Omnicare from 1994 until 2010 as a consulting pharmacist, director, director of operations, vice president of operations, and general manager of its Wadsworth, Ohio, pharmacy.[7/]

Gale's complaint targets Omnicare's practices with Medicare Part A drug coverage for patients in SNFs.  He says that Omnicare offered kickbacks, including discounts and even below-cost per-diem Medicare Part A pricing.[8/]  Because Medicare pays the SNFs at a fixed per-diem rate, Omnicare's lower per-diem medication rate increases the SNFs profits.[9/]  Relator Gale says that Omnicare used these below-cost per-diem rates to obtain SNF referrals of other Medicare customers, especially Part D customers.[10/]  Gale says this arrangement violates the Medicare Anti-Kickback Statute and has sued under the False Claims Act on behalf of the United States.[11/]

This Court scheduled the case for trial on October 21, 2013.[12/]  The Court ordered Gale to identify his experts on February 25, 2013, and ordered Omnicare to identify its experts by March 18, 2013.[13/]  The parties were required to file any objections to the qualifications of the experts by

---

[5/]*See, e.g.*, Doc. 104.

[6/]Doc. 1 at ¶¶ 2, 17-18.

[7/]*Id.* at ¶ 1.

[8/]*Id.* at ¶ 24.

[9/]*Id.* at ¶¶ 17-18.

[10/]*Id.* at ¶ 24.

[11/]*Id.* at ¶¶ 26-32, 55-62.

[12/]Doc. 50 at 4.

[13/]Doc. 51.

Case No. 1:10-CV-00127
Gwin, J.

August 21, 2013.[14]

Gale disclosed Kathy McNamara as his trial expert on the fair market value of drug pricing and other services.[15]  McNamara is a CPA and a Senior Manager at Myers & Stauffer.[16]  Omnicare disclosed Dr. Mohan Rao, Ph.D., as its trial expert.[17]  Rao is a Managing Director and Principal of Navigant Economics.[18]  Relator and Defendant have timely filed objections to the testimony of Rao and McNamara, respectively.[19]

Relator Gale argues that Rao's testimony will be irrelevant to the issue of whether Omnicare's pricing violated the Anti-Kickback Statute.[20]  He also says that Rao's testimony exceeds the scope of his expertise and is based upon unreliable assumptions and theories.[21]  For its argument, Defendant Omnicare says that McNamara is not qualified to give an expert opinion about fair market value and that her testimony is based upon unreliable assumptions and theories.[22]  The parties have filed responses to the motions,[23] and the motions are ripe for decision.

## II. Legal Standard

Rule 702 of the Federal Rules of Evidence controls the admission of expert testimony.  Under Rule 702, testimony based on specialized knowledge is admissible if it "will help the trier of fact to

---

[14]/*Id.*
[15]/Doc. 55.
[16]/*Id.* at 1.
[17]/Doc. 56.
[18]/*Id.* at 1.
[19]/Docs. 106, 107.
[20]/Doc. 106-1 at 3-8, 9-13.
[21]/*Id.* at 3-13.
[22]/Doc. 107-1.
[23]/Docs. 111, 113

Relator Gale also filed a reply in support of his motion to exclude Rao's testimony.  Doc. 114.  Defendant Omnicare moved to strike the reply because it is not authorized by the Court's order governing challenges to experts.  Doc. 115. The Court **GRANTS** the motion to strike.  The Court's order governing challenges to experts did not authorize the filing of a reply brief, Doc. 51, and no reply brief is needed.  Accordingly, the Court **STRIKES** the reply brief from the record.

Case No. 1:10-CV-00127
Gwin, J.

understand the evidence or to determine a fact in issue."[24]  The expert's testimony must also be "based on sufficient facts or data," be "the product of reliable principles and methods,"and be the product of reliable application of those principles and methods to the facts of the case.[25]  "[T]he law grants a district court the same broad latitude when [the district court] decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination."[26]  But to qualify as an expert witness, the expert must be qualified "by knowledge, skill, experience, training, or education."[27]

As commentators have noted, Rule 702 liberalized the admissibility of expert testimony from the earlier *Frye* standard.[28]  Under this liberal approach, expert testimony is presumptively admissible.[29]

Further, experts need not confine their testimony to matters upon which they have personal knowledge.[30]  Experts may base their opinions on facts and data "experts in the particular field would reasonably rely on . . . in forming an opinion on the subject."[31]

For the instant motions, the Court restricts itself to determining whether the experts' purported testimony is admissible.  To conduct this inquiry, the Court considers the parties' objections.

---

[24]/Fed. R. Evid. 702(a).
[25]/*Id.* 702(b)-(d).
[26]/*Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 142 (1999).
[27]/Fed. R. Evid. 702.
[28]/*See, e.g.*, Weinstein's Federal Evidence § 702.02, at 702-6.
[29]/*Id.*
[30]/*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993).
[31]/Fed. R. Evid. 703.

Case No. 1:10-CV-00127
Gwin, J.

### III. Dr. Mohan Rao

Dr. Mohan Rao earned a Ph.D in Economics from the University of Colorado.[32]  He now works as the Managing Director at Navigant Economics and as an adjunct professor at Northwestern University in the Department of Industrial Engineering and Management Sciences.[33]  He has studied market structure, competition, pricing, and marketing, among other things, including Medicare and medicaid reimbursement policies and pharmaceutical pricing in SNFs.[34]

Rao plans to testify for Defendant Omnicare.  First, he will testify that only a low percentage of Omnicare's of contracts are per-diem contracts.[35]  He reasons that Omnicare did not engage in kickbacks because the number of per-diem contracts would be higher if the kickbacks were indeed successful inducements.[36]  Second, he will testify that the pricing is a product of competitive pressures, is consistent with basic economic principles, and is not a kickback.[37]  And third, he will testify that there is no harm to the government as a result of Omnicare's actions.[38]

Relator Gale objects to Rao's planned testimony for a variety of reasons.  In general, Gale says that Rao's opinions are illogical.[39]  Gale reasons that Omnicare could choose to offer per-diem pricing to any SNF or could choose not to offer per-diem pricing to any SNF.[40]  Gale argues that unless Omnicare used the per-diem pricing to induce fee for service referrals, no rational actor would

---

[32]/Rao Rep. at 3, ¶ 2.

[33]/*Id.* at 3, ¶ 1.

[34]/*Id.* at 3, ¶ 3.

[35]/*Id.* at 4, ¶ 8.

[36]/*Id.* at 4-5, ¶ 8.

[37]/*Id.* at 5, ¶ 8.

[38]/*Id.*

[39]/*See, e.g.*, Doc. 106-1 at 3 ("This conclusion flies in the face of obvious reality").

[40]/*See, e.g., id.* ("[C]ompetition and illegal pricing are not mutually exclusive.").

Case No. 1:10-CV-00127
Gwin, J.

lose money by offering per-diem rates below total costs.[41]

For the reasons explained below, Gale's objections mostly do not succeed. Relator's challenges make sense, but the challenges impact the weight of Rao's testimony, not its admissibility. Two of Relator's objections succeed unless Defendant can lay the proper foundation for the testimony at trial.

**A.    A Market-Based Valuation**

Gale objects that Rao uses a competitive-market presumption in his analysis.[42] In summary, Rao presumes that Omnicare is a rational economic actor and no rational economic actor would offer below-cost per-diem rates that lost money, especially when the broad majority of contracts are fee-for-service contracts.[43] Rao's analysis focuses on Omnicare's marginal cost.[44] He reasons that if the Part A per-diem rate exceeds the marginal cost, the sale benefits Omnicare even if the sale does not exceed Omnicare's total unit cost.[45] Of course, this argument cuts both ways. Especially where per-diem rates are the exception, Relator alternatively argues that no rational actor would offer below-cost per-diem rates that lost money, *unless the contracts acted as loss leaders for sales that would more than make up the per-diem loss.*[46]

Specifically, Gale notes that "it is not true that Omnicare must *either* be engaged in illegal

---

[41]*See, e.g., id.* at 6 ("Indeed, it would make little sense were Omnicare *not* to limit the scope of its cut-rate *per diem* deals: not only is any illegal conduct inherently risky, but also, lowball *per diems*, standing alone, are money losers.").

[42]*Id.* at 3-5.

[43]*See, e.g.,* Rao Rep. at 19, ¶¶ 36-37.

[44]*See, e.g., id.* at 33-34, ¶ 69.

[45]*Id.* at 33, ¶ 69.

[46]Doc. 106-1 at 6-7 ("[W]hen it is necessary to gain a facility's lucrative other government healthcare business, omnicare signs sweetheart *per diem* deals without reservation.").

Case No. 1:10-CV-00127
Gwin, J.

kickbacks *or* operating in a competitive environment, because Omnicare may be doing *both*."[47]
Furthermore, Gale says that Rao's market analysis "ignores the regulated marketplace which sets the
framework for this case," preferring his own expert's analysis under a "'distorted'" market
framework.[48]

The jury should decide this issue.  The jury may decide that Omnicare operates in a
competitive marketplace where the Part D fee for service contracts are untied to the Part A per-diem
contracts.  If the jury finds no market distortions or inefficiencies, Rao's opinion is relevant.
However, the jury could alternatively find the market for providing drugs to SNF patients does not
naturally clear at the lowest price.  The jury could find that patients make no informed decision when
choosing Part D providers and are steered by the SNFs who have received a significant Part A price
benefit.  These are questions that the jury will have to answer, and, therefore, they are not a basis to
exclude Rao's testimony.

**B.      The Significance of the Number of Per-Diem Facilities**

Gale objects to Rao's discussion about Defendant Omnicare's decreasing Part A per-diem
contracts.[49]  Rao suggests that the declining number of Part A per-diem contracts supports finding
the per-diem contracts did not induce referral of Part D business.[50]  As Rao sees it, if low-cost Part
A contracts induced Part D referrals—where Omnicare made profits—Defendant Omnicare would
have expanded the Part A per-diem contracts.[51]

---

[47]/*Id.* at 3 (emphasis in original).
[48]/*Id.* at 4.
[49]/*Id.* at 5-7.
[50]/Rao Rep. at 22, ¶ 42.
[51]/*Id.*

Case No. 1:10-CV-00127
Gwin, J.

Responding, the Relator says that the decline of per-diem facilities does not mean the below-cost pricing did not induce Part D referrals and that the decreasing number of Part A per-diem contracts is irrelevant to whether the pricing scheme was an inducement at the time covered by the lawsuit.[52] Some factors support Gale's argument. Omnicare apparently offered no uniform Part A pricing. Each sale differed. A jury could see Omnicare's declining number of Part A per-diem contracts as Omnicare's effort to avoid losses unless absolutely necessary. Also, before 2009, the United States and states challenged Omnicare's purported illegal kickbacks to nursing facilities under the Medicare program. Omnicare might have pulled back from Part A per-diem contracts for reasons independent of whether the Part A per-diem rate brought Defendant Omnicare profits.

Nevertheless, Gale's arguments go to the weight that Rao's opinion should receive. Gale does not directly challenge Rao's training or methodology. Instead, Gale challenges Rao's conclusions. The jury should decide whether Rao should be believed. A jury could agree with Rao that Omnicare would have more per-diem contracts if they were inducements to receive more lucrative, successfully induced, profitable Part D Medicare transactions. Gale may respond to that argument with the very points he raises in his motion. But the jury will have to decide that question. To the extent Gale challenges Rao's expertise to render this opinion, Rao bases his opinion on facts and economic inferences that are within his expertise as a holder of a doctorate in economics. Gale believes Rao's opinions that Omnicare would offer below-cost per-diem Part A contracts are illogic unless those contracts induced Part D contracts. He can make that argument to the jury.

---

[52]/Doc. 106-1 at 6-7.

-8-

Case No. 1:10-CV-00127
Gwin, J.

**C.      Analysis of Risk-Sharing**

Gale also objects to Rao's opinion that Omnicare sought to avoid per-diem contracts.[53] Gale says Omnicare's effort to avoid per-diem Part A contracts is not relevant to the issue of whether the pricing arrangement violates federal law and is based on unreliable facts and economic principles.[54]

Once again, this evidence cuts both ways. Omnicare suggests it avoided arguably losing per-diem Part A contracts because they did not induce profitable Part D fee-for-service contracts.[55] In contrast, Relator Gale says that any money-losing Part A per-diem contract illegally induced Part D referrals even if Omnicare avoided the losses with other SNFs.[56] And Rao's opinion might support the Relator. If Omnicare sought to avoid money losing Part A per-diem contracts, why would Omnicare ever offer such contracts unless Omnicare believe the per-diem contract was needed to induce profitable Part D contracts?

Whether his conclusions are correct or incorrect, Rao's analysis is sufficiently based on economic principles. Furthermore, Rao's opinion is potentially relevant. Gale's argument that an economically rational actor would behave differently—"one would expect that Omnicare's *per diem* pricing would be *higher* than its fee-for-service pricing"[57]—should be decided by the jury.

**D.      "Loss Leaders"**

Rao gives the opinion that Omnicare was not engaging in "loss leader" behavior with the

---

[53]*Id.* at 7-8.

[54]*Id.*

[55]Doc. 111 at 9 ("Dr. Rao's analysis on this issue is relevant to determining whether Omnicare acted with the requisite intent.").

[56]Doc. 106-1 at 8 ("any purported business preferences generally harbored by institutional pharmacies or nursing facilities in the industry are irrelevant to whether Omnicare here offered illegally low *per diem* Medicare Part A contracts to facilities for the purpose of inducing the rest of a facility's business").

[57]*Id.* at 8.

Case No. 1:10-CV-00127
Gwin, J.

unexceptional opinion that in competitive markets pricing moves toward matching the lowest
competitor price.[58]  Rao does not identify any record evidence that Omnicare was responding to
lower Part A per-diem rates from other institutional pharmacies.  Rao also gives the equally
unexceptional statement that "lower prices can lead to reduced profits for the firms that provide these
products or services."[59]  He then gives the opinion that Omnicare does not price per-diem Part A
coverage as a loss leader because SNFs are well informed.  He also says loss-leader pricing can be
used to eliminate competitors and no evidence shows Omnicare eliminated any competitors using
used loss-leader pricing.[60]

Relator Gale says this opinion should be excluded because it is based on the incorrect
assumption that nursing home bills are charged to a single payor.[61]  Instead, "one payor (the nursing
home facility) pays the low kickback price, and a  different payor (the federal government) pays the
higher price from the resulting referral."[62]

At this stage, Rao's loss leader discussion seems not relevant.  His price-matching testimony
only becomes relevant if other evidence is offered that competitors had offered equally low Part A
per-diem pricing.  His testimony that SNFs are well-informed consumers only has relevance if he
can show that SNFs pay some part of Part D fee for service charges.

The Court therefore grants Relator Gale's motion to forbid Rao's testimony on these issues
unless evidence shows that competitors offered lower Part A per-diem pricing or shows that SNF

---

[58]/Rao Rep. at 35, ¶ 73.

[59]/Id.

[60]/Id. at 36-37, ¶ 75.

[61]/Doc. 106-1 at 8.

[62]/Id.

Case No. 1:10-CV-00127
Gwin, J.

paid some part of the Part D cost and would be motivated to reduce costs in making referrals.

**E.      Anticompetitive Pricing**

As discussed above, Rao says Omnicare did not price below cost to drive competitors out of business.[63]  He suggests Omnicare engaged in "pro-competitive price matching behavior."[64]

Gale objects that he "does not raise an antitrust claim" and so the opinion is irrelevant.[65] Gale seems correct.  The Relator has made no antitrust claim and Rao's opinion that Omnicare was not seeking to drive competitors out of business seems irrelevant.  Also, Rao's testimony that Omnicare offered low Part A per-diem pricing to match competitors is not relevant until Omnicare offers evidence that it needed to match a competitor's low Part A per-diem prices.

The Court grants Relator's motion in limine on this ground.  Rao will not give testimony regarding price matching or anticompetitive pricing unless a foundation has been made and the Court has revised this ruling after determining that this testimony has become relevant.

**F.      Harm to the Government**

Gale objects to Rao's discussion of the alleged absence of any harm to the government because "the measure of damages in a[] [False Claims Act] case based on violations of the [Anti-Kickback Statute] is the total value of the government's payments on claims resulting from the kickbacks."[66]  Therefore, it is irrelevant whether the government is harmed.  In support of this position, Gale cites *United States v. Rogan*, 517 F.3d 449 (7th Cir. 2008).[67]

---

[63]/Rao Rep. at 36-37, ¶ 75.

[64]/*Id.*

[65]/Doc. 106-1 at 9.

[66]/*Id.* at 10.

[67]/*Id.* at 11.

Case No. 1:10-CV-00127
Gwin, J.

In his report, Rao gives an opinion that the United States was not harmed by Omnicare's arguably below-cost Part A per-diem pricing.[68]  He offers two counterfactual possible alternatives: 1) Omnicare offers a per-diem Medicare Part A contract, but at a higher rate; or 2) Omnicare offers a Medicare Part A contract with a fee-for-service payment arrangement.[69]  He reasons that the United States would not have paid more (presumptively referring to Part A coverage) in either.[70]

Omnicare says that Rao's discussion is relevant to the question of damages because Sixth Circuit precedent requires that a damage award must subtract the value received by the government.[71]  Omnicare also cites a D.C. Circuit case holding similarly.[72]

The False Claims Act imposes two types of liability.  First, a liable defendant must pay "a civil penalty of not less than $5,000 and not more than $10,000" for each false claim.[73]  In addition, a plaintiff can recover "3 times the amount of damages which the Government sustains because of the act of that person."[74]

In determining damages, the Seventh Circuit has ruled that "the entire amount that [the defendant] received on these [false] claims must be paid back" together with a statutory penalty.[75]  Other Courts have subtracted the value received.[76]  The Court is not aware of any definitive Sixth Circuit authority on this issue.

---

[68]/Rao Rep. at 39, ¶ 81.

[69]/*Id.* at 38, ¶ 78.

[70]/*Id.* at 38, ¶¶ 79-80.

[71]/Doc. 111 at 13.

[72]/*Id.* (citing *United States ex rel. Davis v. District of Columbia*, 679 F.3d 832 (D.C. Cir. 2012)).

[73]/31 U.S.C. § 3729(a)(1).  The penalty is adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. 2461, to $5,500 to $11,000.

[74]/*Id.*

[75]/*United States v. Rogan*, 517 F.3d 449, 453 (7th Cir. 2008).

[76]/*See, e.g.*, *United States ex rel. Davis v. District of Columbia*, 679 F.3d 832 (D.C. Cir. 2012).

Case No. 1:10-CV-00127
Gwin, J.

The Court recognizes that these are complex issues that may require additional briefing.  The Court finds that the proper time to consider this issue is when the parties propose jury instructions, because the parties will propose instructions on the proper calculation of damages.  Accordingly, the Court will not exclude Rao's testimony on harm to the government at this time.

**G.      Pricing Below Average Cost As Rational**

Finally, Relator Gale challenges Rao's generalized discussion that firms operate if they can cover their marginal costs even where revenues do not cover their average costs.[77]  Rao bolsters his opinion with the common sense observation that a negative profit margin under a contract of a company Omnicare later bought did not guarantee a negative profit margin at a different point of time under a new contract.[78]  He also observes that when Omnicare lowered its per-diem Part A price from an already losing price it also excluded certain drugs from coverage.[79]  Finally, Rao observes that "Gale has not, however, provided evidence that Omnicare's per-diem pricing was below cost."[80]

Gale objects to Rao's statements that pricing below average cost may be economically rational because that "is precisely what government guidance has said is forbidden."[81]  In support of this objection, he cites an OIG Advisory Opinion which defines whether a discount is below cost as whether it is below average cost.[82]

Gale may be correct that pricing below average cost is remuneration under the Anti-Kickback

_____

[77]/Rao Rep. at 34, ¶ 70.
[78]/*Id.*
[79]/*Id.*
[80]/*Id.* at 34, ¶ 71.
[81]/Doc. 106-1 at 12.
[82]/*Id.* at 12-13.

-13-

Case No. 1:10-CV-00127
Gwin, J.

Statute.  But, this is fact dependent.  Was Omnicare's Part A per-diem pricing below marginal cost?

Was it below average cost?  How much below cost was any pricing?  How long did Omnicare

continue any pricing below cost?

This Court finds that the scope of Rao's testimony on marginal cost and his criticism that

insufficient evidence shows that Omnicare priced below cost should be left for trial.

For the reasons above, Gale's objections to Rao's testimony are granted and overruled as

described above.

### IV. Kathy McNamara

Relator Gale offers Kathy McNamara as an expert witness.  Kathy McNamara is a certified

public accountant and an employee of Myers & Stauffer LC.[83]  She has over twenty-five years of

experience in healthcare and business consulting, and she specializes in Medicare and Medicaid

compliance issues, fair market value examinations, and healthcare reimbursement.[84]  She has

performed hundreds of fair-market valuations in the Anti-Kickback Statute context and numerous

commercial reasonableness analyses.[85]

McNamara plans to testify on behalf of Relator Gale to the following things: 1) that pricing

below total cost is below fair-market value and 2) that many of the per-diem arrangements are not

commercially reasonable.[86]

Defendant Omnicare objects to McNamara's proposed testimony for a variety of reasons.

For the reasons explained below, Omnicare's objections are overruled.

---

[83]/McNamara Rep. at 2.

[84]/*Id.*

[85]/*Id.* at 2-3.

[86]/*Id.* at 10.

-14-

Case No. 1:10-CV-00127
Gwin, J.

## A.    Qualification as an Expert

Omnicare objects to McNamara's proposed testimony because it says that she "has no relevant knowledge, skill, experience, training, or education to qualify her opinion regarding the appropriate valuation methodologies and their application."[87/]  Specifically, Omnicare says that she has no relevant degrees, training, or membership in professional organizations.[88/]  Additionally, it says that her previous testimony as an expert witness was either in different areas or was rejected.[89/]  Gale disagrees with Omnicare's characterization of her prior testimony.[90/]

The Court finds that McNamara can testify on fair-market value and commercial reasonableness.  An expert does not need to be qualified only by education or membership in professional organizations.  Rule 702 allows an expert to be qualified by "knowledge, skill, experience, [or] training."[91/]  McNamara has performed hundreds of relevant fair-market valuations and numerous commercial reasonableness analyses over twenty-five years of experience.  This body of work is sufficient to qualify her as an expert in this case on fair-market value and commercial reasonableness.

## B.    Changed Definition of Fair-Market Value

Relator Gale generally alleges that Omnicare priced Part A per-diem sales below cost.[92/]  In part, Omnicare responds that it needed to price Part A per-diem coverage at market rates.[93/]

---

[87/] Doc. 107-1 at 5.

[88/] *Id.*

[89/] *Id.* at 6-7.

[90/] Doc. 113 at 5-8.

[91/] Fed. R. Evid. 702.

[92/] *See, e.g.*, McNamara Rep. at 10.

[93/] *See, e.g.*, Rao Rep. at 35, ¶ 73.

Case No. 1:10-CV-00127
Gwin, J.

Omnicare objects that McNamara does not consider competitors' prices in determining fair-market value.[94]  Omnicare says McNamara has shifted her position and that McNamara now rejects competitors' pricing for determining the fair market value of the Part A services that Omnicare provided.[95]

McNamara is entitled to change her opinion about the proper method of calculating fair-market value.  The method of calculating fair-market value may need to change depending on the specific factual circumstances of each case.[96]  Thus, it is reasonable that she might change her opinion.  If she gave differing testimony, Omnicare can cross-examine her and can argue that any shifting opinions undermine her credibility.  Nonetheless, her change of opinion is insufficient to exclude her present opinion.

## C.       Rejecting Competitors' Prices for Valuations

McNamara does not use competitor comparable pricing because she said it is tainted by industry practices similar to those involved with this case.[97]  Specifically, she determined that she should not use comparables because the market is "'distorted.'"[98]  She suggests support for this in Department of Health and Human Services Office of Inspector General ("OIG") opinion letters and

---

[94]/Doc. 107-1 at 7-11.

[95]/Id. at 8.

[96]/See, e.g.., United States ex rel. Obert-Hong v. Advocate Health Care, 211 F. Supp. 2d 1045, 1049 n.2 (N.D. Ill. 2002) ("We note that fair market value here may differ from traditional economic valuation formulae. Normally, we would expect the acquisition price to account for potential revenues from future referrals. Because the Anti-Kickback Act prohibits any inducement for those referrals, however, they must be excluded from any calculation of fair value here. See 42 C.F.R. 1001.952(b) and (c). There is, nonetheless, some value that would be considered fair and would comply with the statute.").

[97]/McNamara Rep. at 14.

[98]/Id.

-16-

Case No. 1:10-CV-00127
Gwin, J.

the Stark Law.[99]

      To the extent that Omnicare disagrees that its market is "'distorted,'" it can cross-examine McNamara and can provide its own evidence that the market is not "'distorted.'"  To the extent that McNamara relies on OIG letters and the Stark Law, Evidence Rule 703 allows an expert to base an opinion on facts or data not admitted into evidence if "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject."[100]

      The Court finds Omnicare's objection unpersuasive.  The OIG is staffed with experienced healthcare professionals on whose opinions other experts in the field may reasonably rely.  Although the limitations on the letters may prevent them from being admitted into evidence in this case, McNamara as an expert in the field may rely on the letters.  Additionally, the Stark Law relates to a different but related form of Medicare fraud.  An expert may reasonably rely on that definition as well.  Omnicare is entitled to inquire into these bases on cross-examination if it so chooses.

**D.**      **Considering Total Cost for Fair-Market Value**

      Omnicare objects that McNamara considered total cost when she analyzed fair-market value.  McNamara bases this determination on the OIG letters.[101]  Omnicare argues that courts have generally looked to incremental cost.[102]  For the reasons above, McNamara is entitled to look to the OIG letters as an opinion that an expert may reasonably rely upon.  Additionally, although other courts may have looked to incremental expenses, Omnicare acknowledges it was because "[p]laintiff failed to present evidence that [incremental analysis] . . . [was] improper under standard accounting

---

[99]/*Id.* at 5-9, 14.

[100]/Fed. R. Evid. 703.

[101]/Doc. 107-1 at 13-15.

[102]/*Id.*

-17-

Case No. 1:10-CV-00127
Gwin, J.

principles."[103] McNamara may present her opinion to the jury just as the expert presented it to the judge during the bench trial in *McKesson*. Omnicare may then attempt to persuade the jury that valuation method is wrong.

 For the reasons above, Omnicare's objections to the proposed testimony of Kathy McNamara are overruled.

## V. Conclusion

 For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Relator Gale's motion[104] and **DENIES** Defendant Omnicare's motion.[105] Rao may not testify about loss leaders, price matching, or anticompetitive pricing unless the Court finds that the proper foundation has been laid at trial. The Court also **GRANTS** Omnicare's motion to strike Gale's reply in support of his motion to exclude the testimony of Rao.[106] The Court **STRIKES** the reply.[107]

 IT IS SO ORDERED


Dated: September 21, 2013      s/   *James S. Gwin*
                 JAMES S. GWIN
                 UNITED STATES DISTRICT JUDGE

---

[103]/*Id.* at 15 (quoting *United States ex rel. Jamison v. McKesson Corp.*, 900 F. Supp. 2d 683, 700 (N.D. Miss. 2012)).

[104]/Doc. 106.

[105]/Doc. 107.

[106]/Doc. 115.

[107]/Doc. 114.